John Lee SINCOX, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 77–2025.

United States Court of Appeals,
Fifth Circuit.

April 20, 1978.

A. Kennon Goff, III, Ruston, La., for petitioner-appellant.

John L. Sincox, pro se.

Edward L. Shaheen, U. S. Atty., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for respondent-appellee.

Before HILL, RUBIN and VANCE, Circuit Judges.

VANCE, Circuit Judge:

This is an appeal from the United States District Court for the Western District of Louisiana, Monroe Division, in a proceeding under 28 U.S.C. § 2255. Petitioner filed a Motion to Vacate Sentence pursuant to that section on January 27, 1977. Following answer by the United States and an evidentiary hearing, the district court denied the motion on April 21, 1977.[1] It is from that denial of relief that petitioner appealed.

The essential facts appear without substantial dispute. In June, 1975, petitioner, John Lee Sincox, was tried in the district court on two indictments charging him with obstruction of justice in violation of 18 U.S.C. Section 1510. The jury returned a verdict of guilty on each indictment. The court polled the individual jurors during which the following transpired:

THE COURT: Mr. Lewis, is this your verdict?

JUROR LEWIS: Yes. With reasonable doubt.

THE COURT: With reasonable doubt.

The court then polled the remaining jurors and accepted the verdict of guilty. There was no objection, motion, question or instructions by defense counsel, the prosecutor, or by the court. On June 16, 1975, Sincox was sentenced to two five year terms with the court ordering that the sentences be served consecutively. No appeal was taken. Sincox was taken immediately to the Monroe City Jail and was thereafter incarcerated at the federal correctional institution where he remains.

At trial Sincox had been defended by retained counsel. After the jury was polled he first asked his counsel if that was not a mistrial but was told to be quiet. He then stated that he wanted to appeal. Over a period of months he restated his desire to appeal to his retained counsel several times both orally and in writing. He specifically based his request for appeal on the failure of the juror to be convinced beyond a reasonable doubt. He had paid all his money (apparently $5,000) to retained counsel and his understanding was that counsel would defend the case and appeal it to the supreme court if necessary. He never varied from his expressed instructions that his case be appealed, and has persisted in seeking legal help in that connection. He never discussed waiver of his right to appeal.

The retained counsel who had represented Sincox at trial stated that he did not make any objection to the verdict being entered "through ignorance." He stated that he was "dumfounded" and "confused." He did not file any motion but he looked up the law and discussed it with the trial judge. It was his interpretation that he had to raise an objection at the time of the juror's answer. Similarly, counsel also reached the decision that an appeal would be futile. Counsel testified that he made the error which he would have to characterize as inexcusable neglect. The decision not to appeal was his decision. He informed Sincox that he thought an appeal would be a useless gesture but in a letter dated December 2, 1975 stated:

However, in the event the court should overrule my motion for correction of sentences, I do intend to appeal.

In this court, two fundamental questions are presented. The first concerns the effect of one juror's failure to be convinced of guilt beyond a reasonable doubt in the absence of objection. The second involves the availability of relief under Section 2255.

The ruling of the district court correctly characterized the situation as follows:

1. Through inadvertence judgment was not entered into the record until May 25, 1977.

The court begins with the premise that error was committed when it accepted Lewis' verdict. The words of Juror Lewis can be taken in no other vein than their clear meaning. His verdict was not predicated upon a belief that petitioner was guilty beyond all reasonable doubt. This vote deprived the jury verdict of the unanimity that is required by federal statute. The crucial question for determination, then, is whether the error warrants granting the requested relief.

■ The district court's conclusion that Juror Lewis' reasonable doubt deprived the vote of unanimity eliminates any necessity of our belaboring the point except, perhaps, to note that it is supported by ample authority. See, for example: *United States v. Edwards,* 469 F.2d 1362 (5th Cir. 1972); *United States v. Sexton,* 456 F.2d 961 (5th Cir. 1972); *United States v. McCoy,* 139 U.S.App.D.C. 60, 429 F.2d 739 (1970); *Matthews v. United States,* 252 A.2d 505 (D.C. App.1969); *Cook v. United States,* 379 F.2d 966 (5th Cir. 1967). Uncertainty or contingency to the finality of a jury's determination in legal effect is the same as no verdict. *Cook v. United States, supra.*

The trial court conceived that the right of the accused to a unanimous verdict was a purely statutory right. It based that conclusion on rejection by the supreme court in *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) and *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) of the contention, made here by appellant, that jury unanimity is a requisite of due process of law. Subsequent to the ruling of the trial court, this court decided *United States v. Gipson,* 553 F.2d 453 (1977), clarifying, in this circuit at least, the effect to be given *Johnson v. Louisiana,* as it relates to the instant problem. As *Gipson* points out, four dissenting justices in *Johnson* concluded that unanimity is an essential ingredient of the Sixth Amendment jury trial right applicable in federal criminal trials and of the Fourteenth Amendment rights applicable in state court prosecutions. Justice Powell agreed with the dissenters with respect to federal trials but rejected the contention that unanimity was so fundamental a right as to be binding on the states under the Due Process Clause of the Fourteenth Amendment.

From this analysis came the statement in *Gipson* :

It is thus settled that a federal criminal defendant has a constitutionally based right to a unanimous jury verdict.

and in the footnote at this point:

This right may not be waived.

Our decision with respect to the nature of the accused's rights blunts the principal thrust of the government's argument: that we are concerned only with a statutory right that was waived if· not seasonably raised. With respect to the requirements of waiver, the situation is not unlike the one dealt with by this court in *United States v. Taylor,* 507 F.2d 166 (5th Cir. 1975) and by the sixth circuit in *United States v. Taylor,* 498 F.2d 390 (1974). Both cases involved a sick juror. In the case in this court the juror had a heart attack while the jury was deliberating but after all twelve had voted for conviction on three out of sixteen counts. The trial judge accepted a guilty verdict on those three counts. In the sixth circuit case Taylor was tried and convicted by an eleven person jury after his counsel had entered into a stipulation that the trial could proceed with· eleven jurors if a juror should become ill. Both convictions were reversed for lack of expressed consent of the defendant himself, intelligently and knowingly given.

■ Fed.Rules Cr.Proc. rule 31(d) provides:

If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

When Juror Lewis was polled and stated that he had a reasonable doubt the trial judge had the duty either to order the jury to retire for further deliberations or to dismiss them. Absent exceptional circumstances, not here applicable, there was no third option. *United States v. Edwards, supra.* The burden is not an unreasonable

one to place on the trial judge. At this most sensitive stage of the proceeding the trial judge was personally conducting the only inquiry then being conducted. It is he who is in the best position to be aware of whatever happens.[2] The practical necessity of inviting an irregularity to the attention of the court is not present.

The recent decision of *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) draws a distinction between the "fundamental right" dealt with in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) and the "vast array of trial decisions, strategic and tactical which are committed to a defense counsel under our adversary system." With respect to events falling into the latter category, objection is an essential prerequisite to a claim of error. Accepting as a verdict of guilty that which in reality is no verdict at all must fall in the former category.

At this point we encounter the shifting standards governing collateral review following a procedural default by defense counsel in the trial court. As another panel of this court did in *Jiminez v. Estelle,* 557 F.2d 506 (5th Cir. 1977), we must come to grips with the profound change from *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) just fourteen years ago to the more recent cases of *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ The record establishes without dispute that Sincox did not deliberately bypass the appellate process and that he did not "understandingly and knowingly waive" either his right to a unanimous verdict or his right to appeal. If *Fay v. Noia, supra,* governed questions such as are here presented the matter would be resolved.

We read the more recent cases, however, to prescribe a more stringent test to be applied to the question now before the court. Under the *Davis* and *Wainwright* rule this collateral attack must fail unless the procedural defaults of Sincox's counsel may be excused for cause and the error resulted in prejudice to him.

■ Sincox had a fundamental right guaranteed by the Sixth Amendment that if convicted at all it would be a valid, unanimous jury verdict of guilt. He was adjudged guilty on the strength of an invalid, eleven out of twelve verdict. He had an absolute right to present that error on appeal and persistently asserted his desire to appeal, yet no appeal was taken. The "prejudice" hurdle is quickly overcome.

"Cause" presents a problem of vastly different dimension. Mere statement of the rule that there must be cause is of little help and the supreme court has intentionally refrained from providing usable guidance as to its meaning.

It was the government which elicited from retained counsel the admission that he was guilty of "inexcusable neglect," now presented as the equivalent of defendant's consensual relinquishment of his rights to object and appeal. The sense of the government's argument would therefore characterize such "inexcusable neglect" as the antithesis of "cause."

■ We are not, however, considering the tactical or strategic decisions routinely made by counsel during the course of a trial. Nor are we making a hindsight evaluation of a "judgment call." Counsel's failure to do anything to protect two fundamental rights of his client was an inexcusable mistake of grand proportion.[3] With no

2. *According to their testimony both defense counsel and the Assistant United States Attorney heard Juror Lewis say something but misunderstood what he had said. Each thought he had said something about "reservations." The trial judge correctly understood and correctly repeated the juror's words.*

3. The government elicited testimony showing that counsel was a successful trial attorney of many years experience. We do not focus on his overall competence or standing within the profession and our holding should not be so construed. We are dealing with two specific mistakes that had the effect of compromising fundamental rights of one client. Counsel's candor in characterizing his own mistakes tends to enhance rather than detract from his professional standing.

legal training, Sincox immediately grasped the situation, inquired about a mistrial and began a continuous stream of requests for an appeal. The failure of his counsel to respond denied him the effective assistance of counsel.

In *Chapman v. United States,* 469 F.2d 634, 636 (5th Cir. 1972) this court said:

[T]he failure of privately-retained counsel to perfect an appeal, when requested to do so, amounts to such a dereliction of duty as to deprive the defendant of both the effective aid of counsel at a critical stage of the proceedings and the right to appeal.

The precedents in this circuit demonstrate that of itself such denial of his right to appeal would support the grant of Sincox's motion. *Kent v. United States,* 423 F.2d 1050 (5th Cir. 1970).

In *Jiminez v. Estelle* this court viewed the *Wainwright* rule as juxtaposing the "cause" exception with prevention of a "miscarriage of justice." The rationale of *Jiminez* leads inexorably to the conclusion that proof of the ineffectiveness of Sincox's counsel was a sufficient showing of cause.

■ In *Bowen v. Johnston,* 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939), Mr. Chief Justice Hughes in speaking for the court noted that the rule requiring resort to appellate procedure is not a rule defining power but one which relates to the appropriate exercise of power. *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963) holds:

Conventional notions of finality of litigation have no place where life or liberty is at stake and an infringement of constitutional rights is alleged.

To whatever degree this language has been limited by *Davis* and *Wainwright,* we don't perceive a limitation that would deny relief under the facts now presented. Here prejudicial infringement of fundamental constitutional right was alleged and proved. The record is sufficiently complete so that exercise of the lower court's power under Sec. 2255 was clearly supported. Petitioner's motion should have been granted.

REVERSED and REMANDED.