Nelson JAMARDO, et al., Petitioners,

v.

UNITED STATES of America, Respondent.

No. 84–0137–CIV–JLK.*

United States District Court, S.D. Florida.

July 27, 1983.

* Together with Nos. 83–2978–CIV–JLK, 83–2367–CIV–JLK, 83–2501–CIV–JLK, 83–2500–CIV–JLK, 83–2593–CIV–JLK, 83–2943–CIV–JLK to 83–2945–CIV–JLK, 83–3160–CIV–JLK, 84–0135–CIV–JLK, 84–0136–CIV–JLK, 84–0138–CIV–JLK to 84–0140–CIV–JLK, 84–0901–CIV–JLK, 84–0739–CIV–JLK.

Thomas Connors, Miami, Fla., for Raul Hernandez, Angel Cruz, Nestor Fernandez, Richard Allen Shank, Domingo Galvan, Sergio Galvan, Francisco Hernandez, Manuel Sanchez and Ralph Jesus Valdez.

Jack Silver, North Miami Beach, Fla., for Jose Manzon Garcia, Richard Mungin, Francisco Paco Novales and Orlando V. Maldonado.

Philip Carlton, Miami, Fla., for Nelson Jamardo.

Nestor Castillo, Tampa, Fla., for Antonio Sanchez.

Richard Sharpstein, Miami, Fla., for Antonio Hernandez.

James G. McAdams, III, Miami, Fla., for the United States.

## MEMORANDUM OPINION CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES LAWRENCE KING, District Judge.

This matter began almost four years ago when, in the late afternoon of 14 November, 1980, Monroe County sheriff's deputies noticed suspicious activity and began surveilance of the Cohen estate on Big Pine Key in the Florida Keys. By 6:30 a.m. the following morning the deputies and U.S. Customs officials had arrested 29 suspects and seized approximately 31,000 pounds of marijuana. A two-count indictment was returned against the 29 defendants, charging each with conspiracy to possess with intent to distribute in excess of 1,000 pounds of marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute approximately 31,000 pounds of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). After a four week trial, 22 of the 29 defendants were convicted on both counts. Those convictions were affirmed by the United States Court of Appeals for the Eleventh Circuit. *U.S. v. Blasco*, 702 F.2d 1315 (11th Cir.1983) *cert. denied* —— U.S. ——, 104 S.Ct. 275 and 276, 78 L.Ed.2d 256 (1983). Sixteen of the defendants are now before the court as petitioners seeking relief pursuant to 28 U.S.C. § 2255. These sixteen petitions have been consolidated for trial and the

court now renders judgment as to all petitions.

The petitioners raise three categories of claims. First, they challenge the constitutionality of accepting a non-unanimous verdict. Second, they argue that if a unanimous verdict can be waived, it was not freely, knowingly and intelligently waived by these petitioners. And third, they contend that they were denied ineffective assistance of counsel at both the trial level and appellate level of these proceedings.

## FINDINGS OF FACT

■ During the course of the jury deliberations at the trial, it became evident that the jury could not reach a verdict on certain of the defendants. After four weeks of preserving a record replete with the government error and misconduct, the defense counsel were faced with a dilemma: either accept a mistrial and allow all errors to be cured on retrial or have their clients waive their right to a unanimous verdict so as to preserve that error and misconduct for appellate purposes.

Counsel chose to propose that their clients be allowed to waive a unanimous verdict. The matter was first discussed in open court and then the court recessed to allow all parties to consider the issue. Finally, over the court's reluctance, it was agreed that the defendants would be offered the opportunity to waive a unanimous verdict. The defendants were counseled as a group, out of the presence of the court, so that they could discuss the waiver with their attorneys. That having been accomplished, each defendant was then questioned extensively in open court as to the voluntariness of his waiver. Each defendant steadfastly represented to this court that they understood their right to a unanimous verdict and that they freely and voluntarily desired to waive that right.

While the atmosphere surrounding the out of court deliberations between counsel and the defendants may not have been ideal, it is clear now that each defendant clearly and completely understood his right to a unanimous verdict and that each de-

fendant perceived it to be in his interest to waive that right. The waivers were free and voluntary; the coercion now claimed is not supported by the facts. The defendants would have the court find that each of them waived their right because of peer pressure. They contend that each thought the others wanted to waive the right to a unanimous verdict and that each was afraid to pursue his own interest because that might have injured the others. The court is not convinced that this coercion actually occurred but even if it did it is not reasonable to believe that such pressure would be sufficient to coerce a reasonable adult to lie in open court by stating that he freely and voluntarily waived his constitutional right to a unanimous verdict. The other contentions relating to the voluntariness of the waiver are equally unsupported in fact.

## CONCLUSIONS OF LAW

■ As to the claim of ineffective assistance of counsel, the appropriate standard of review has two prongs:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■■ Judicial scrutiny of counsel's performance must be highly deferential and the court must attempt to reconstruct the circumstances surrounding the challenged conduct and to evaluate the conduct from counsel's perspective at the time. *Id.* at

——, 104 S.Ct. at 2066. But even if the defendant can show that counsel's performance was not reasonably effective, he must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different:

When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

*Id.* at ——, 104 S.Ct. at 2069.

■ Applying this standard to the case at bar, the facts are clear that there was no prejudice. The evidence was so strong that defense counsel knew that at that point in time there was no question that the defendants would be convicted. That fact was ratified by eleven jurors who had just heard the case and by the United States Court of Appeals for the Eleventh Circuit. All defense counsel testified that were the jury to have been declared deadlocked and a mistrial ordered by the judge with a second trial to have occurred within a reasonable, but short, time thereafter, the defendants would have been easily convicted by the second jury. That was also the perception of this court at that time.

But beyond the lack of prejudice, there can be no fault found with the defense counsels' performance. Counsel was fully aware that the trial of the defendants had been hampered by the performance of the first prosecutor, Ms. Leah Simms. In fact, the Court of Appeals noted that, "Although the judge banished Simms temporarily from the courtroom for her conduct, we suggest that a citation for contempt would have been more appropriate." *Blasco,* 702 F.2d at 1327 n. 24. When Ms. Simms was banished from the courtroom, the prosecution was assumed by Mr. Thomas Sclafani. Mr. Sclafani did a superb job of cleaning up the prosecution's case and the defense counsel knew that if a mistrial were declared Mr. Sclafani would very capably prosecute the case in the second trial. Faced with that option, counsel chose to protect the trial record so that either the Court of Appeals would dismiss the indictment because of the prosecutorial misconduct committed by Ms. Simms or the second trial would be postponed. If the second trial were postponed, the defendants could hope that memories would fade or that witnesses would become unavailable. At any rate, the defendants would be free on bond pending the second trial. Contrary to the defendant's assertions, it would have been ineffective assistance of counsel for the defense lawyers to have demanded a new trial at that time. A new trial could have served no purpose but a speedy conviction with an unassailable record.

Because this matter is before the court on collateral review of the effectiveness of counsel, the court could stop at this point and deny the petitions for habeas corpus. However, because of the unusual facts of this case, the court is compelled to go further and consider the constitutionality of the defendants' waiver of their right to a unanimous verdict.

In *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the Court considered the constitutionality of "less-than-unanimous" verdicts in state courts. The court held that such verdicts did not violate the Constitution of the United States. Mr. Justice White announced the judgment of the Court in an opinion in which The Chief Justice, Mr. Justice Blackmun and Mr. Justice Rehnquist joined. They explained:

Our inquiry must focus upon the function served by the jury in contemporary society.... As we said in *Duncan* [*v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)], the purpose of trial by jury is to prevent oppression by the Government by providing a 'safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge.' ... 'Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen...' ... A requirement of una-

nimity, however, does not materially contribute to the exercise of this commonsense judgment. As we said in *Williams* [*v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) ], a jury will come to such a judgment as long as it consists of a group of laymen representative of a cross section of the community who have the duty and the opportunity to deliberate, free from outside attempts at intimidation, on the question of a defendant's guilt. In terms of this function we perceive no difference between juries required to act unanimously and those permitted to convict or acquit by votes of 10 to two or 11 to one. Requiring unanimity would obviously produce hung juries in some situations where non-unanimous juries will convict or acquit. But in either case, the interest of the defendant in having the judgment of his peers interposed between himself and the officers of the State who prosecute and judge him is equally well served.

*Apodaca,* 92 S.Ct. at 1632–33. (citations omitted).

In *Sincox v. United States,* 571 F.2d 876 (5th Cir.1978), the United States Court of Appeals for the Fifth Circuit stated that the right to a unanimous jury verdict could not be waived. However, that decision was actually premised on the fact that the defendant had not voluntarily waived his right to a unanimous verdict. In fact, in that case the defendant had protested to his trial counsel, at trial, that he did not want to waive a unanimous verdict. Defendant's counsel told the defendant to be quiet and then refused to object to the non-unanimous verdict and also refused to appeal the issue.

■ The case at bar is fundamentally different from that presented in *Sincox.* Here defense counsel, acting in a very responsible manner, perceived that it would be in the defendants' interests to waive the right to a unanimous verdict. They then overbore the prosecutor's hesitance to agree and convinced the court that the defendants should be allowed to so choose. Then, each of the defendants knowingly

and voluntarily waived their right. The Court in *Apodaca* explained that the purpose of a jury was to protect the defendant from improper action of the court or prosecutor. In *Sincox* the Court of Appeals correctly found that the non-unanimous verdict did not adequately protect the defendant because he was deprived of his right to a unanimous verdict by the over zealous actions of the judge. In the case at bar, however, neither the court nor the prosecutor ventured into the realm of the jury except upon the clear invitation of the defendants. The reliability of the jury's verdict was not diminished by the defendant's knowing and voluntary waiver of unanimity. In fact, it would have been fundamentally unfair for the court to have overreached its authority and denied the defendants the right to proceed with the trial after jeopardy had attached. The defendants were fully satisfied with the reliability of the jury and had a legitimate concern for protecting the trial record that the government had filled with error.

In *Hibdon v. United States,* 204 F.2d 834 (6th Cir.1953), the United States Court of Appeals for the Sixth Circuit determined that rule 31(a) of the Federal Rules of Criminal Procedure, 18 U.S.C., prohibited the waiver of a unanimous verdict. That case is distinguishable on its facts in that there the trial judge overreached his authority; that jury had returned after only 27 minutes of deliberation and the trial judge asked the parties if they would accept a majority verdict. In the case at bar, the jury had deliberated for more than a day and previously had been sent back to the jury room to continue deliberations after it had said that it was deadlocked. But even then the court did not initiate the idea of waiver. As previously stated, it was the defense counsel, not the judge or the prosecutor, who initiated the idea of waiver. Consequently the concern of the Court of Appeals in *Hibdon,* that the court might have overborne the will of the defendant, is not present in this case.

■ But the court must also respectfully disagree with the Sixth Circuit's construc-

tion of rule 31 in *Hibdon*. That court found that the drafters of the rule had deleted express authorization for waiver of a unanimous verdict from the last draft of the rule. The court then determined that that deletion must lead to the conclusion that the rule prohibits such a waiver. However, this court is of the opinion that the drafters of the rule deleted the waiver language because they were concerned with the potential for coercion by the judge who suggests to a defendant that he waive his right to a unanimous verdict. It appears to the court that the drafters of rule 31 decided not to encourage the waiver of the right and, so, only restated the right to a unanimous verdict. They did not expressly prohibit the waiver of the right. In fact, this court interprets the deletion of all waiver language from the rule as simply a decision not to consider the issue of waiver within the rule. The possibility of waiver was left to the judicial development of the law.

The court also finds it helpful to compare the case now at bar with *United States v. Vega*, 447 F.2d 698 (2nd Cir.1971). In the *Vega* case, the jury returned a note that it could not reach a verdict. The jury was given a modified Allen charge and returned for further deliberations. Subsequently, the court received a second note stating that the jury could not deliberate further and the court was advised that there was one primary holdout. Upon agreement of all the parties and the court, the one holdout was dismissed from the jury and the jury returned a unanimous 11 person verdict. The difference between that case and the case at bar is illusory. The distinction that the court dismissed the dissenting juror so that the remaining jurors could reach a unanimous verdict is of no legal significance. In fact, by dismissing the dissenter from the jury the defendant was prejudiced more than the defendants now before the bar because Mr. Vega was deprived of any persuasive argument the holdout juror might have continued to make on his behalf. That juror was particularly important to Mr. Vega because a second juror was waivering and had previously sided with the juror who was dismissed. It was only after the one juror was dismissed that the remaining eleven jurors were able to come to a unanimous decision.

 Finally, if any error was committed by the court in allowing the defendants to waive their constitutional right to a unanimous verdict, it was invited by the defendants and they cannot be heard to complain of it now. *United States v. Bowers*, 567 F.2d 1309 (5th Cir.1978). The defendants are guaranteed one bite from the judicial apple. They took that bite at the trial of this matter and cannot now be allowed to turn the clock back in order to take a second bite.

For these reasons, the court concludes that the petitions for writ of habeas corpus filed by these sixteen defendants must be denied and the cases dismissed. This Memorandum Opinion shall be filed by the clerk of court in each record. A separate Final Judgment will be rendered by the court in each case.