782 F.2d 928
 Antonio SANCHEZ, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Manuel SANCHEZ, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Sergio GALVAN, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Jose Monzon GARCIA, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Ralph Jesus VALDEZ, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Domingo GALVAN, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Francisco HERNANDEZ, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Richard Allen SHANK, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Nelson JAMARDO, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Angel CRUZ, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
Nestor FERNANDEZ, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 Nos. 84-5632, 84-5640, 84-5655, 84-5656, 84-5659, 84-5672,
84-5686, 84-5697, 84-5706, 84-5708 and 84-5734.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 19, 1986.
 
 1
 Nestor Castillo, Jr., Tampa, Fla., for Antonio Sanchez and Manuel sanchez.
 
 
 2
 Thomas H. Connors, Miami, Fla., for Sergio Galvan, Garcia, Valdez, Domingo Galvan, Hernandez, Shank, Cruz and Fernandez.
 
 
 3
 Carlton & Carlton, Philip Carlton, Jr., Miami, Fla., for Jamardo.
 
 
 4
 Stanley Marcus, U.S. Atty., Nancy Worthington, Thomas Sclatani, Linda Collins Hertz, James G. McAdams, III, William Norris, Asst. U.S. Attys., Miami, Fla., for U.S.
 
 
 5
 Appeals from the United States District Court for the Southern District of Florida.
 
 
 6
 Before JOHNSON, Circuit Judge, HENDERSON*, Senior Circuit Judge, and ALLGOOD**, Senior District Judge.
 
 ALLGOOD, Senior District Judge:
 
 7
 The appellants here were 11 of 29 people arrested on Big Pine Key, Florida in November, 1980, and charged with conspiracy and possession with intent to distribute approximately 31,000 pounds of marijuana. After a four week trial 22 of the 29 were found guilty on both counts of a two-count indictment. Those convictions were affirmed by this court. United States v. Blasco, 702 F.2d 1315 (11th Cir.1983) cert. denied, 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). The defendants then petitioned the court for relief pursuant to 28 U.S.C. Sec. 2255. Those petitions were denied and this appeal followed.
 
 
 8
 The critical issue on appeal is whether the right to a unanimous jury verdict in a federal criminal case may be waived when the defendant himself initiates the request for such a waiver. The situation which brought about this request was very unusual. The facts leading to the arrest were set out in detail in Blasco and do not need to be repeated here. In this appeal we are concerned only with the events at trial. During the first couple of weeks of the trial there were numerous allegations of prosecutorial misconduct. At one point the trial judge intimated that the cumulative effect of the various discovery violations were dangerously close to requiring a mistrial. Because of the prosecutor's conduct, she was removed from the case and another Assistant United States Attorney took over the prosecution. From that point, the case was tried virtually error free.
 
 
 9
 After deliberating for almost two days, the jury informed the court that it was unable to reach a decision. The defense attorneys were understandably concerned for a number of reasons: they had carefully protected a record replete with errors; Judge King had indicated he would retry the case almost immediately in Miami; and they were aware that the second prosecutor would likely retry the case flawlessly. Judge King had also indicated that he would be willing to grant appeal bonds because there were significant appellate issues. Since the appellate process could take eighteen months to two years, the defendants would be free for that much longer. If the indictments were not dismissed, with that much time before a second trial they could hope that memories would fade or witnesses be unable to testify. The defense attorneys testified at the evidentiary hearing on the 2255 motion, that they really believed that they had a good chance of a successful appeal with the record as it stood then. If the case were retried immediately, with the real possibility of an error free trial, an appeal bond would surely be denied and the defendants would go to jail immediately.
 
 
 10
 As the defense attorneys testified at the evidentiary hearing, they weighed the various possibilities and told the court that the defendants might be willing to stipulate to less than a unanimous verdict. The court was hesitant to even consider such action, but agreed to give the attorneys time to talk to their clients. The attorneys were told that the Government would have to agree also.
 
 
 11
 The nine attorneys and 29 defendants met as a group in what has been described as a small crowded room. Several of the defendants spoke no English and most of the attorneys spoke little or no Spanish. In spite of these difficulties, the various options were explained to the defendants. Following this meeting the court was informed that all of the defendants were in agreement regarding the waiver of their right to a unanimous verdict. After some discussion with the United States Attorney, the prosecutor informed the court that the Government would not object to a verdict of 9-3, 10-2 or 11-1. At that time no one knew how the jury stood numerically. In open court the judge, through an interpreter, explained to the defendants in detail that they had the right to a unanimous jury verdict and questioned each one individually as to the voluntariness of his waiver. The jury then returned an eleven to one verdict in favor of conviction. The defendants were adjudicated guilty and sentenced, but allowed to remain free on bond pending the appeal.
 
 
 12
 The direct appellate process took 26 months. After the case was affirmed by the Eleventh Circuit, 16 of the defendants retained new attorneys and petitioned the court for relief pursuant to 28 U.S.C. Sec. 2255, contending that their right to a unanimous verdict is a constitutional right which cannot be waived, but if it can be, the waiver was not knowingly and intelligently given. They also contended that they were denied the effective assistance of counsel at both the trial and appellate levels. The district judge conducted an evidentiary hearing which lasted more than a week. During the hearing, testimony was taken from the defendants, several attorneys who had participated in the initial trial, the Assistant United States Attorney in charge of the case at trial and several independent witnesses. Following this extensive inquiry, Judge King entered an order and well reasoned memorandum opinion denying the petitions.
 
 
 13
 On appeal the defendants argue that the court erred in not finding that the Sixth Amendment to the Constitution and Fed.R. of Crim.Proc. 31 mandate that the jury verdict be unanimous, and prohibit the waiver of a non-unanimous verdict.
 
 
 14
 While the Constitution does not set out the specific requirements of a jury trial,[1] the Supreme Court has said that the phrase "trial by jury" embraces three elements:
 
 
 15
 (1) that the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous.
 
 
 16
 Patton v. United States, 281 U.S. 276 at 288, 50 S.Ct. 253 at 254, 74 L.Ed. 854 (1938).
 
 
 17
 In a line of cases following Patton, the Court has reaffirmed the determination that in federal criminal cases a defendant has the right to a unanimous verdict. See Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); Andres v. United States, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055 (1948).
 
 
 18
 The question remains though--may a defendant waive that right? The Supreme Court has never directly addressed this question. However, in the case of the first two elements of a jury trial, the Court has held that they may be waived if the waiver is knowingly and intelligently made. In discussing the accused's right to waive a trial by jury the Patton court said, "[i]f it be assumed that the constitutional provisions for trial by jury should be construed as guaranteeing a right, there is no valid reason why their benefit should not be waivable." 281 U.S. at 281, 50 S.Ct. at 276. Applying the same reasoning here it would seem that under very limited circumstances, the right to a unanimous verdict is also waivable.
 
 
 19
 The petitioners argue that Fed.R.Crim.Proc. 31 also forbids the waiver of a unanimous verdict. Rule 31 is not as strongly worded as the petitioner would contend.[2] As the petitioners and other courts have noted, the preliminary draft of Rule 31 originally contained a provision for waiver of the unanimity requirement. That provision was so strongly criticized as not giving sufficient protection to a defendant, that it was deleted from the final version. See United States v. Pachay, 711 F.2d 488 (2d Cir.1983); United States v. Scalzitti, 578 F.2d 507 (3d Cir.1978); Hibdon v. United States, 204 F.2d 834 (6th Cir.1953). We do not agree with other circuits that have interpreted that action to mean that waiver is forbidden by the rule. Had that been the intention of the legislature it could certainly have included language to that effect. We would agree with Judge Meskill of the Second Circuit who wrote a specially concurring opinion in the Pachay case and reads Rule 31a to merely "restate a defendant's right to a unanimous verdict and protect that right from interference by the trial judge."
 
 
 20
 The principal concern of opponents of a waiver provision is the potential for coercion by judges and prosecutors who would propose the waiver to the defendant and then be in a position to recommend or impose a harsh sentence upon a defendant who refuses. See, United States v. Pachay, 711 F.2d 488, 493 (2d Cir.1983); Hibdon v. United States, 204 F.2d 834, 839 (6th Cir.1953). Such an argument is persuasive for finding that a defendant cannot waive the right where the suggestion comes from the Government or the judge, but does not follow when requested by the defendant himself. Thus it would seem that Rule 31(a) was written to prohibit interference with a defendant's right to a unanimous verdict, but not to prohibit the waiver of the right.
 
 
 21
 In concluding that Patton could waive his right to be tried by a jury of twelve, the Court set out the following perimeters:
 
 
 22
 Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.
 
 
 23
 281 U.S. at 312-313, 50 S.Ct. at 263.
 
 
 24
 This admonition would seem to be an appropriate guideline for the acceptance of a waiver of the constitutional right to a unanimous verdict.
 
 
 25
 The petitioners argue that every circuit that has addressed the issue of a non-unanimous verdict has concluded that the defendants in a federal criminal trial cannot waive or attempt to waive a unanimous jury verdict. The cases are few and clearly distinguishable from the one before us. The Sixth Circuit was the first to consider the issue in Hibdon v. United States, 204 F.2d 834 (6th Cir.1953). In Hibdon the idea of waiver was initiated by the trial judge after the jury had deliberated only 27 minutes. In two other cases the idea of waiver was also initiated by the court and ultimately reversed on appeal. See United States v. Smedes, 760 F.2d 109 (6th Cir.1985); United States v. Pachay, 711 F.2d 488 (2d Cir.1983).
 
 
 26
 In United States v. Scalzitti, 578 F.2d 507 (3d Cir.1978), while it was the defendant who initiated the attempted waiver, the Third Circuit Court of Appeals interpreted Fed.R.Crim.Proc. 31 to prohibit such action. Id. at 511. The Ninth Circuit has likewise read Rule 31 to prohibit the waiver. United States v. Lopez, 581 F.2d 1338 (9th Cir.1978).
 
 
 27
 In the Tenth and Fifth Circuits the lower court's decision was reversed when the district judge treated a verdict as unanimous when one or more polled jurors indicated they were not in agreement with the verdict. See United States v. Morris, 612 F.2d 483 (10th Cir.1979); Sincox v. United States, 571 F.2d 876 (5th Cir.1978); United States v. Edwards, 469 F.2d 1362 (5th Cir.1972). In those cases the judgments were reversed because of the judge's failure to resolve the uncertainty.
 
 
 28
 The Second Circuit has addressed the issue most recently in United States v. Chavis, 719 F.2d 46 (2d Cir.1983). The Second Circuit recognized the difference in the Chavis case and the earlier Pachay case as the origin of the idea of waiver coming from the defendant himself. In the Chavis case they found it unnecessary to answer the question about a defendant's right to voluntarily waive a unanimous verdict, saying:
 
 
 29
 Before we could conclude that such an important right had been waived, we would have to be satisfied that the trial judge had made a searching inquiry to insure that the defendant was fully aware of his right to a unanimous verdict and that he had given up that right of his own free will and not as the result of a misunderstanding, or a promise, threat or someone's suggestion.
 
 
 30
 719 F.2d at 48.
 
 
 31
 The facts as reported by the Chavis court indicated that there was no direct questioning of the defendant by the trial judge and an inadequate explanation of the right to waive. There was also no apparent advantage to be gained by the defendant from such action.
 
 
 32
 In the Fifth Circuit's case of United States v. Gipson, 553 F.2d 453 (5th Cir.1977) the defendant's non-unanimity challenge was based not on the result reached by the jury, but on the instruction to the jury, which in essence allowed the jury to return a guilty verdict even though they may not have agreed on what the defendant had done. Within this context the Fifth Circuit also said that a federal defendant has a constitutionally based right to a unanimous jury verdict.
 
 
 33
 The only other case which provides guidance for this court is the Fifth Circuit decision of Sincox v. United States, 571 F.2d 876 (5th Cir.1978). In Sincox the trial court ignored an individual juror who, when polled, indicated he had doubts about his decision. Sincox's attorney also failed to take any action, including taking an appeal, even when asked to do so by the defendant. The question before the Court of Appeals was the "effect of one juror's failure to be convinced of guilt beyond a reasonable doubt in the absence of objection." In response the court pointed out that the right to a unanimous verdict is constitutionally, not statutorially, based, thus not waived by the defendant's failure to object or file a timely appeal.
 
 
 34
 Sincox is clearly distinguishable from the case before us today. In Sincox there was no attempt on the part of the defendant to voluntarily waive his right to unanimous verdict. Rather there was a failure on the part of the trial court to take any action when informed that one member of the jury had reservations about a guilty verdict.
 
 
 35
 Sincox has repeatedly and erroneously been cited for the proposition that a criminal defendant should not be allowed to voluntarily waive the right to a unanimous verdict. Actually Sincox stands for the proposition that the failure of the defendant to object when a non-unanimous verdict is returned does not prevent its being raised on appeal. The court noted that it is not the responsibility of the defendant to make the court aware of the irregularity in the verdict.
 
 
 36
 As is apparent from a review of the cases, no other court has faced a situation like this one. We find no other cases in which the defendants clearly thought they could gain an advantage by going ahead and accepting what they felt sure would be a guilty verdict.
 
 
 37
 Clearly there is a constitutional right to a unanimous verdict, but in exceptional circumstances the defendant should be allowed to waive that right. It is hard to imagine a situation in which a defendant would want to accept a non-unanimous verdict rather than have a mistrial declared, but there could be a case again where the defendant anticipates a favorable outcome ultimately if a non-unanimous verdict is accepted, and in those circumstances the defendant should be allowed to do so. Before allowing the defendant to waive the right, the following criteria should be met: (1) the waiver should be initiated by the defendant, not the judge or prosecutor; (2) the jury must have had a reasonable time to deliberate and should have told the court only that it could not reach a decision, but not how it stood numerically; (3) the judge should carefully explain to the defendant the right to a unanimous verdict and the consequences of a waiver of that right; and (4) the judge should question the defendant directly to determine whether the waiver is being made knowingly and voluntarily.
 
 
 38
 It is undisputed that the defendants in the present case initiated the idea of accepting a non-unanimous jury verdict. The judge expressed reluctance but eventually agreed to go along with such a verdict, so long as the Government and each individual defendant found this acceptable. At the time the parties agreed to be bound by a non-unanimous verdict, the jury had already been deliberating the better part of two days. The jury indicated that it was unable to reach a verdict on some of the defendants; however, the jury did not indicate how it was divided numerically.
 
 
 39
 Petitioners contend that, even if a knowing and voluntary waiver of a non-unanimous jury verdict is permissible, the petitioners did not knowingly and voluntarily give such a waiver. We reject petitioners' contentions. The record indicates that the trial judge received assurances from the defendants' lawyers that the lawyers had discussed the acceptance of non-unanimous verdicts with all of the defendants, and the defendants had all agreed to accept such verdicts. Then, in the presence of all the defendants and Spanish-speaking interpreters, the trial judge stated that the attorneys in the case had "agreed that this jury may return a verdict that is not unanimous. The law requires a unanimous verdict." The judge explained that, if a verdict was agreed to by nine or more of the twelve jurors, the verdict would be binding on both the Government and the defendants.
 
 
 40
 The judge then stated that he would call off the name of each defendant individually, ask the defendant to stand, and ask whether that defendant understood what had been proposed and whether he agreed to go along with the proposal. The judge said, "Do not hesitate to ask any question that you wish to ask. If you do not fully understand it for any reason, you should indicate that you do not understand it and I will explain it to you...." The judge proceeded to question each of the defendants individually as to whether they understood what was proposed and agreed to go along with the proposal. Each defendant responded affirmatively to both questions.
 
 
 41
 In the Sec. 2255 proceedings below, the district court found as a fact that "it is clear now that each defendant clearly and completely understood his right to a unanimous verdict and that each defendant perceived it to be in his interest to waive that right. The waivers were free and voluntary...." We review this determination by the district court under the clearly erroneous standard. See Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). In light of the exchanges that took place between the trial judge and the defendants, we cannot say that the district court's finding is clearly erroneous. We therefore hold that the defendants knowingly and intelligently waived their rights to unanimous jury verdicts. Furthermore, under the circumstances of this case, such waiver was permissible.
 
 
 42
 Based on these same facts, the petitioners also claim that they were denied the effective assistance of counsel at both the trial and appellate levels. This court has previously held that counsel will not be deemed constitutionally deficient merely because of tactical decisions. Griffin v. Wainwright, 760 F.2d 1505, 1513 (11th Cir.1985). When a lawyer makes an informed choice between alternatives, his tactical judgment will almost never be overturned on habeas corpus. Id. at 1514.
 
 
 43
 The decision to propose a non-unanimous verdict was not due to an oversight on the part of the defendants' attorneys but, rather, was the result of a tactical decision. There was a chance that a non-unanimous jury would find the defendants "not guilty." Furthermore, even if the jury returned verdicts of "guilty," there appeared to be a good chance that, based on the existing trial record, the convictions would be reversed on appeal. If such reversals were based on governmental misconduct, then there was a possibility that the Government would not be permitted to retry the defendants. In any event, with a reasonable likelihood of success on appeal, the defendants were likely to be freed on bond while their appeals were pending.
 
 
 44
 It may have appeared to the defendants' trial attorneys that the least desirable alternative from their clients' standpoint was to have the jury return no verdict at all. If a mistrial were declared, then the defendants would be immediately retried. The evidence against the defendants was strong. If the second trial were relatively error-free and resulted in convictions, then defendants would probably not be freed on bond pending their appeals.
 
 
 45
 Some of the same considerations might have influenced the defendants' appellate counsel not to raise the non-unanimous jury verdict issue in defendants' direct appeal. Whereas a reversal based on governmental misconduct might have precluded further prosecution for the same offenses, a reversal on the non-unanimous verdict issue would have resulted in a retrial.
 
 
 46
 In an ineffective assistance of counsel claim, petitioners have the burden of demonstrating that the challenged action of counsel was not what "might be considered sound trial strategy." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Because petitioners have not sustained this burden, their ineffective assistance of counsel claims are denied.[3]
 
 
 47
 The decision of the court below is AFFIRMED.
 
 
 
 *
 See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Amendment VI provides:
 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which the district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.
 
 
 [2]
 Fed.R.Crim.Proc. 31 states:
 (a) Return: The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.
 * * *
 (d) Poll of Jury: When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations.
 
 
 [3]
 We note that, despite the failure of counsel to properly raise the non-unanimous jury verdict issue on direct appeal, we have reached that issue on the merits. Petitioners therefore must fail on their ineffective assistance of appellate counsel claim for the additional reason that petitioners cannot show any prejudice from the failure of appellate counsel to raise the non-unanimous verdict issue on direct appeal. Griffin, supra, 760 F.2d at 1515
 Normally, courts would be barred from reaching the non-unanimous jury verdict issue on Sec. 2255 proceedings if that issue was not first raised on direct appeal, unless the petitioner can show "cause and prejudice" for his procedural default. United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). The cause and prejudice requirement has been excused, however, where the procedural default occurs because of a newly announced procedural rule. Cf. Francois v. Wainwright, 741 F.2d 1275, 1281 (11th Cir.1984) ("state procedural ground barring presentation of a federal claim is not independent and adequate if the state applies a new procedural rule without notice"). Prior to our decision today, appellate counsel in the present case might have reasonably believed that the right to a unanimous jury verdict was nonwaivable, either at trial or on direct appeal. We therefore decline to hold that, in this particular case, petitioners are procedurally barred from asserting their non-unanimous jury verdict claim.