786 So.2d 56 (2001)
Kevin D. NOBLES, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3047.
District Court of Appeal of Florida, Fourth District.
May 16, 2001.
*57 Carey Haughwout, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
DELL, J.
Kevin D. Nobles appeals his convictions and sentences for aggravated assault with a deadly weapon and battery on Rose Darden, and improper exhibition of a weapon. We affirm.
Appellant was arguing with George Adkisson outside of St. Matthews House when Rose Darden, accompanied by Donnie Washington, came out of the house and asked appellant to leave the property. Appellant first ignored Darden, then, when she continued to insist that he leave, appellant spat in her face, poked her, and displayed a weapon and threatened to shoot her.
Appellant left and Darden called the police. The police officers who responded spoke with the witnesses, obtained a description of the assailant, and began patrolling the area. While doing so, they received an anonymous call telling them that the person they were looking for was at the corner of 6th and Sapodilla. When they arrived in that area, they saw appellant, who fit the description, sitting on a wall, and another man of similar appearance farther down the street. As they drove past appellant, a communication came in from the anonymous caller that they had just passed the person, who was sitting on the wall, wearing a blue sweatshirt. When the officers came back, appellant walked away, and continued to walk away despite the officers' instructions to stop. He entered a house. The police entered also, and saw several people, including appellant. They patted appellant down, but found nothing. Appellant agreed to accompany them to the house where the assault occurred. When they arrived, all three witnesses, without hesitation, identified him as the assailant.
Appellant raises three points on appeal. He contends that the trial court erred by denying his motion to suppress evidence, by entering a judgment of conviction based on a four to two majority verdict, and by sentencing him as a prison releasee reoffender.
First, appellant argues that the trial court should have suppressed both the out-of-court and in-court identifications because they resulted from an unnecessarily suggestive procedure. We disagree. The events giving rise to the charges occurred during daylight hours, and appellant came very close to the witnesses. George Adkisson testified that the incident took about ten minutes. As he was being dropped off at the house by another person, appellant stuck his head in the car and shouted at him and the driver. Appellant was trying to sell drugs. When Adkisson got out of the car to go into the house, appellant followed him into the gated yard of St. Matthews. Adkisson said that he was very near to appellant, and demonstrated for the jury the distances between himself and appellant, and between Darden and appellant during the incident. Rose Darden testified that the incident took about 20 minutes, and she paid careful attention to appellant, who came close enough to poke her in the chest and to spit in her face. Washington testified that he was four to five feet away from appellant and that Darden and appellant were face to face. The witnesses gave the police descriptions that closely matched appellant's appearance at the time of his arrest some thirty or forty *58 minutes later. The arresting officer brought appellant to the witnesses' location. When the witnesses viewed appellant in the arresting officer's police car, they immediately and without hesitation identified him from a distance of three to four feet.
In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court held that:
the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Id. at 199-200, 93 S.Ct. 375. We hold that the record contains sufficient evidence to satisfy the requirements of Neil and that the trial court did not err when it denied appellant's motion to suppress.
Next, appellant argues that he should have a new trial because his convictions were based on a simple majority verdict. After deliberations had been under way for some time, the jury sent a note saying that they would not be able to reach a unanimous decision. The court and counsel engaged in a lengthy discussion about the proper course of action, including an offer by defense counsel to discuss with his client the possibility of waiving a unanimous verdict. With the approval of both counsel, the court questioned the jury concerning their inability to reach a unanimous verdict on any of the counts and, with the consent of appellant's counsel, then gave the Allen charge[1].
After further deliberation, the jury could not reach a verdict. The court read a note from the foreperson which explained that they could not agree that appellant was the person who committed the offenses. The court had the following discussion with the defendant:
It's my understanding that after conferring with counsel, and without knowing how the jury is split in this case, that it's your desire to waive or give up your right to a unanimous verdict and to agree to a, what we call a majority verdict, which means there are six jurors, if four of them or more vote one way or another as to any count, that would be the verdict in the case.
Is my understanding correct?
APPELLANT: Yes, Sir.
Again with the prior approval of counsel, the trial court instructed the jury to specify on the verdict form the number in favor of the verdict and the number against. The instruction informed the jury that if they voted three to three, there would be a mistrial, but there would be a decision if they voted either five to one or four to two. The jury returned a four to two verdict of conviction. Appellant now argues for the first time that the trial court erred when it accepted his request for a majority verdict because even though waivers of the right to a unanimous verdict have been accepted for super majorities of five to one, there is no authority that expressly approves a four to two majority verdict.
In Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), the United States Supreme Court reversed, as a violation of the Sixth Amendment, the conviction of a defendant who was tried *59 before a five-person jury pursuant to Georgia law. Ballew disapproved of the state-mandated use of a jury smaller than six persons.
Although the United States Supreme Court held in Ballew that the state may not compel a jury of less than six persons, it is well established that a defendant may agree to accept a jury of less than six persons. In Blair v. State, 698 So.2d 1210 (Fla.1997), the Florida Supreme Court considered whether a defendant might voluntarily waive his right to be tried by a jury of six persons.
The question here, however, is whether the right, once defined, may be waived, in whole or in part. As noted in the discussion above, it has been universally acknowledged that the right to a jury trial may be waived entirely. That being so, it would be anomalous indeed to hold that a defendant could waive an entire jury, but not waive the presence of one juror. Based upon the analysis in Patton [v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930) ], we conclude that there is no constitutional bar to a defendant's waiver of the presence and participation of one of the six jurors in a criminal trial.
Id. at 1216-1217.
In Blair the supreme court held that a defendant can waive his right to a jury of six persons, but it did not address the question of whether a defendant may agree to accept a verdict based on a majority verdict of less than six jurors.
We first note that a less-than-unanimous verdict offends neither the Sixth Amendment, Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (affirming convictions by 11-1 and 10-2 verdicts, as permitted by the state constitution) nor the Due Process Clause of the Fourteenth Amendment, Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (affirming a 9-3 verdict, as permitted by statute and the state constitution). In Johnson, the United States Supreme Court said:
[I]t is our view that the fact of three dissenting votes to acquit raises no question of constitutional substance about either the integrity or the accuracy of the majority verdict of guilt.
406 U.S. at 360, 92 S.Ct. at 1623. In Johnson, the defendant specifically argued that guilt cannot be said to have been proved beyond a reasonable doubt when one or more of the jury members still possess such a doubt when deliberations have concluded. The court found this argument unpersuasive for several reasons, including:
That want of jury unanimity is not to be equated with the existence of a reasonable doubt emerges even more clearly from the fact that when a jury in a federal court, which operates under the unanimity rule and is instructed to acquit a defendant if it has a reasonable doubt about his guilt [citations omitted] cannot agree unanimously upon a verdict, the defendant is not acquitted, but is merely given a new trial. [citations omitted]. If the doubt of a minority of jurors indicates the existence of a reasonable doubt, it would appear that a defendant should receive a directed verdict of acquittal rather than a retrial. We conclude, therefore, that verdicts rendered by nine out of 12 jurors are not automatically invalidated by the disagreement of the dissenting three.
406 U.S. at 363, 92 S.Ct. at 1625. See also Jordan v. Massachusetts, 225 U.S. 167, 32 S.Ct. 651, 56 L.Ed. 1038 (1912).
In Sanchez v. United States, 782 F.2d 928 (11th Cir.1986), the Eleventh Circuit considered whether the defendants in a federal prosecution, who by federal law do have the right to a unanimous verdict, may waive that right and accept a less-than-unanimous *60 verdict. It held that the right to a unanimous verdict could be waived subject to certain requirements which the Third District Court of Appeal adopted and applied in Flanning v. State, 597 So.2d 864 (Fla. 3d DCA 1992).
In Flanning, the Third District noted that although Article I sections 16 and 22 of the Florida Constitution had never been interpreted to require a unanimous verdict, it has been long-standing legal practice in this state to do so. Florida Rule of Criminal Procedure 3.440 states that no jury verdict may be rendered unless all jurors agree, and Jones v. State, 92 So.2d 261 (Fla.1956), held that any interference with the right to a unanimous verdict denies the defendant a fair trial. The Flanning court concluded:
[W]e think the right to a unanimous jury verdict may be validly waived by the defendant under certain circumstances. Indeed, it is well settled that the entire right to a jury trial may be validly waived by the defendant under certain circumstances. Indeed, it is well settled that the entire right to a jury trial may be validly waived by the defendant in a criminal case; also an aspect of this right may be validly waived by the defendant, namely, the right to be tried by a 12-person jury in a capital case. We see no reason, then, why the defendant is constitutionally prohibited from waiving another aspect of this rightnamely, the right to a unanimous jury verdict.
Flanning, 597 So.2d at 867 [footnotes omitted]. The court expressed its concern with the possibility that a defendant might feel pressured by the trial judge or the prosecutor into accepting a majority verdict and adopted the requirements of Sanchez, supra. The district court held that a defendant in a criminal case may waive his or her right to a unanimous six-person jury verdict and accept a 5-1 majority verdict
but only when the following requirements are met: (1) the waiver is initiated by the defendant, not the trial judge or the prosecutor; (2) the jury has informed the court that it is unable to reach a verdict, after having had a reasonable time to deliberate; (3) the trial judge explains to the defendant his/her right to a unanimous jury verdict and the consequences of a waiver of that right; and (4) the trial judge questions the defendant directly and determines that the waiver is being made knowingly and voluntarily.
Id. at 865.
The Flanning court also expressed an additional concern:
[W]e have considerable doubt whether the right to a unanimous jury verdict could be validly waived by a defendant so as to accept a plurality verdict, especially as to a six-person jury; this is so because the resultant plurality verdict may not legally constitute the verdict of a jury at all. Moreover, a similar waiver to accept a bare 4-2 [or 7-5] majority verdict may arguably be fraught with similar problems.

Id. at 868 [emphasis added].
Here, appellant was fully informed about his options, had enough time to make a considered decision, and made his decision at the end of the trial after he and his counsel had ample time to observe the jurors and assess the potential impact of the prosecution's case upon them. The record shows that they were aware that the jury could not reach agreement, and that the issue they disagreed upon was the identity of appellant as the perpetrator. The court additionally made specific inquiry into appellant's capacity to make a knowing and intelligent waiver which satisfies the requirements of Flanning and Sanchez.
We therefore hold that the trial court did not err in accepting appellant's waiver *61 of a unanimous verdict and entering its judgment of conviction based on a majority verdict of four to two. Nonetheless, we share the concerns expressed by the court in Flanning. We therefore certify the following question to the Florida Supreme Court:
DOES A CRIMINAL DEFENDANT HAVE THE RIGHT TO KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVE HIS RIGHT TO A UNANIMOUS VERDICT AND ACCEPT THE VERDICT OF A SIMPLE MAJORITY OF THE JURY MEMBERS?
Accordingly, we affirm appellant's convictions. We also affirm his sentence pursuant to the Prison Releasee Reoffender act. See State v. Cotton, 769 So.2d 345 (Fla.2000).
AFFIRMED
WARNER, C.J. and HAZOURI, J., concur.
NOTES
[1] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); Fla. Std. Jury Instr. (Crim.) 3.06.