667 So.2d 834 (1996)
Lance H. BLAIR, Appellant,
v.
STATE of Florida, Appellee.
No. 93-0845.
District Court of Appeal of Florida, Fourth District.
January 10, 1996.
Rehearing Denied, Clarification Granted, and Questions Certified February 21, 1996.
*836 Richard L. Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Michelle A. Konig, Assistant Attorney General, West Palm Beach, for appellee.
ZEIDWIG, HOWARD M., Associate Judge.
Defendant, Lance Blair, appeals his convictions and sentence for burglary of an occupied structure, grand theft, dealing in stolen property and conspiracy to commit burglary. All charges arose out of a burglary of a Palm Beach home that was being renovated. We affirm the convictions for burglary of a structure, dealing in stolen property, and conspiracy to commit burglary and affirm the restitution *837 order of $500,000. However, we must reverse the conviction for grand theft and thus remand for resentencing.

MID-TRIAL REDUCTION TO FIVE-MEMBER JURY
When trial began, six jurors and one alternate were selected and sworn. After opening statements and the testimony of one witness, the trial court excused a juror for lateness and sleeping and seated the alternate as a sixth juror. On the afternoon of the fourth day of trial, the trial court informed the jury that the trial would last longer than the jury had been originally advised, querying whether that would cause "terrible problems for anyone ... anything that can't be rescheduled?" One juror explained he had a conflict which could not be resolved because he was giving a five-day seminar out of state and could not return until the following Wednesday. After discussing scheduling alternatives, such as continuing the case for a week, another juror expressed reservations about the delay.
The trial court then addressed the lawyers at a side bar conference and stated that a possible resolution would be "to go with five." The defense lawyer responded "What if both sides agree to five?" The court and the state indicated agreement and defense counsel advised that he needed "thirty seconds to discuss it with my client because I don't think it would be fair." After a brief break, both sides indicated their willingness to stipulate. However the trial court stated that "I've got to explain to Mr. Blair what we are considering" and then told defense counsel to take "as much time as you need now to discuss that possibility with your client." In the presence of defendant the following colloquy took place:
DEFENSE COUNSEL: I have already discussed it with him and as opposed to postponing it a week or having a possible mistrial, we would rather go with five and I quickly tried to explain him the alternative.
THE COURT: All right. Let me have you explain them again. I want to make sure that this is what he wants to do.
DEFENSE COUNSEL: Well, I told him there is a potential for a mistrial. There also is, as the Court has suggested, postponing it a full week until February 1st.... Well, there are other possibilities of postponing it for a full week and starting it up again February 1st or going with five jurors. I see that as the three alternatives. I'm sure that my client doesn't want a mistrial. So, that leaves us with two alternatives, either February 1st starting off again a week later or going with five jurors.
THE DEFENDANT: Your Honor, we will take the five, if that's all right with you.
The trial court then excused the sixth seated juror and proceeded with trial with the remaining five jurors.
We start with the undisputed proposition that a defendant has a constitutional right to a trial by jury with at least six jurors, guaranteed by both the Florida and United States Constitutions. See Art. I, § 22, Fla. Const. (providing for a jury of not fewer than six); Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (the Sixth Amendment to the United States Constitution requires a jury be composed of at least six persons). A defendant's right to a jury trial is "undisputably one of the most basic rights guaranteed by our constitution." State v. Griffith, 561 So.2d 528 (Fla.1990).
While defendant acknowledges that he could agree to dispense with a jury altogether, he asserts that a five-person jury is inherently infirm and constitutionally infirm. The state counters that if it is permissible to agree to a non-unanimous verdict of five jurors out of six, a unanimous verdict by a five-member jury provides equal if not greater protection to a defendant. As with any other guaranteed constitutional right there is nothing preventing a defendant from waiving fundamental rights when a defendant so chooses. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The United States Supreme Court has held that one charged with a serious crime may dispense with his constitutional right to a jury trial, Adams v. United States ex rel. McCann, 317 U.S. 269, 277-78, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942), either by waiver of *838 a jury trial altogether or by consenting to a trial by fewer than the required number of jurors. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930).
Our supreme court has also long since recognized that a defendant may waive the right to a jury trial altogether, provided that the waiver is reflected on the record. Zellers v. State, 138 Fla. 158, 189 So. 236 (1939). However, "an effective waiver of a constitutional right must be voluntary, knowing and intelligent." Tucker v. State, 559 So.2d 218, 219 (Fla.1990) (citing Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). In Tucker, our supreme court upheld an oral on-the-record waiver by a defendant who was represented by counsel where the record showed that the "trial judge appropriately questioned [defendant] in open court about his choice to proceed without a jury" and made an adequate inquiry into the waiver, even though there was no written waiver as required by rule 3.260. However, the supreme court emphasized that:
[I]t is better practice for trial courts to use both a personal on-the-record waiver and a written waiver. An appropriate oral colloquy will focus a defendant's attention on the value of a jury trial and should make a defendant aware of the likely consequences of the waiver. If the defendant has been advised by counsel about the advantages and disadvantages of a jury trial, then the colloquy will serve to verify the defendant's understanding of the waiver. Executing a written waiver following the colloquy reinforces the finality of the waiver and provides evidence that a valid waiver occurred. Because the waiver of a fundamental right must be knowing and intelligent, the above-stated procedure promotes the policy of recognizing only voluntary and intelligent waivers.
In Griffith, our supreme court addressed the question of when a trial court has the affirmative duty to make record inquiry, concluding that the duty exists only when a right goes "to the very heart of the adjudicatory process, such as the right to a lawyer ... or the right to a jury trial." 561 So.2d at 530. The defendant in that capital case had agreed to a six-person, rather than twelve-person, jury in exchange for the state not seeking the death penalty, but his waiver was not on the record. The supreme court concluded that the defendant's waiver of his right to a twelve-person jury did not need to be on the record because he received a trial by a six-person jury as mandated by the constitution and thus had not been deprived of his fundamental right to a jury trial. However, our supreme court again concluded that "when a defense waiver is required as to any aspect or proceeding of a trial, it would be the better procedure for the trial court to make an inquiry of the defendant and to have the waiver appear on the record," precluding an appeal or postconviction claims of ineffective assistance of counsel. Id. at 531 n. 5.
The corollary to the court's holdings in Tucker and Griffith is that proceeding to trial with less than six jurors does in fact deprive a defendant of a fundamental right which accordingly requires an on-the-record waiver. In Flanning v. State, 597 So.2d 864 (Fla. 3d DCA), review denied, 605 So.2d 1266 (Fla.1992), Judge Hubbart writing for the third district determined that a defendant can waive the right to a unanimous jury verdict and accept a five-one majority verdict, but opined that in most cases the defendant would have little to gain by such a waiver and that it would be "hard to imagine a situation in which a defendant would want to accept a non-unanimous verdict rather than have a mistrial declared." Id. at 867 (quoting Sanchez v. United States, 782 F.2d 928, 934 (11th Cir.1986)). Accordingly the third district recognized that a jury unanimity waiver is fraught with some danger:
In particular, there is the danger that a defendant might feel pressured by the trial judge or prosecutor into accepting a majority verdict so as to save the state the time and expense of a second trialor face a heavier sentence if eventually convicted should he/she refuse to waive the unanimity requirement.
Id. There is also the danger that a defendant in jail awaiting trial may fear that he will not be tried for a long time if he insists on a mistrial. Because of these dangers, "the trial judge should be especially cautious in accepting a waiver without fully probing *839 whether the defendant's sole motivation for doing so is the anticipation of a favorable outcome." Id. at 868. The third district thus adopted the solution of the Eleventh Circuit Court of Appeals in Sanchez v. United States, 782 F.2d 928, 934 (11th Cir.1986), imposing certain prerequisites to a valid waiver:
(1) the waiver should be initiated by the defendant, not the judge or prosecutor; (2) the jury must have had a reasonable time to deliberate and should have told the court only that it could not reach a decision, but not how it stood numerically; (3) the judge should carefully explain to the defendant the right to a unanimous verdict and the consequences of the waiver of that right; and (4) the judge should question the defendant directly to determine whether the waiver is being made knowingly and voluntarily.
Flanning, 597 So.2d at 868.
We decline to adopt a hard and fast rule. We do not question, however, that under Griffith and Tucker defendant's on-the-record waiver was required because defendant is waiving a fundamental right to be tried by a six person jury. The only question to decide is whether defendant's on-the-record waiver was knowing, voluntary and intelligent.
Here defendant was faced with a choice of either agreeing to proceed with five jurors, agreeing to a continuance, or the possibility that a mistrial may be declared based on manifest necessity. Defendant argues that his waiver could not be voluntary because he was coercively misinformed by his defense counsel that a mistrial could be declared and that this misstatement was tacitly approved by the trial court when defense counsel repeated what he told defendant in open court. He argues that because juror inconvenience does not constitute manifest necessity for a mistrial, a mistrial could not have been declared here. See Thomason v. State, 620 So.2d 1234 (Fla.1993); Perkins v. Graziano, 608 So.2d 532 (Fla. 5th DCA 1992). We are not faced with the trial court having declared a mistrial or having indicated that a mistrial was the only alternative. Certainly if defendant had questioned whether the juror's scheduling problem required a continuance, the trial court could have probed further with the juror whether it was of absolute necessity that he leave for the seminar. No doubt at defense counsel's insistence the trial court could have compelled the juror to stay. The record makes clear that neither prosecutor nor defense counsel wanted the trial court to make the particular juror stay and thus leave a potentially disgruntled sixth juror.
Appellate counsel points to one response made by defense counsel when defense counsel initially advised the court "Let me tell you in thirty seconds to discuss it with my client because I don't think it would be fair." However, the context of the entire subsequent colloquy refutes the inference that defense counsel thought the choice was unfair, but rather was referring to the fact that it would be unfair not to discuss it with his client. The record before us indicates that the trial court was in no way trying to force this alternative on the defense, but was open to all possible alternatives. The trial court acted appropriately by giving defense counsel as much time as he needed to discuss this possibility and requesting that defense counsel explain it again on the record "to make sure this is what he wants to do."
Defendant's choice was apt to be made even more intelligently in this case because it occurred after the state had put on a major portion of its case, providing defendant and his counsel an opportunity to evaluate the composition of the five remaining jurors, to evaluate how the case was going based on their perception of the jury's reactions. This then allowed defense counsel and defendant to weigh the alternatives of starting with another jury, staying with the original six-member jury after a short continuance or proceeding with the five remaining members.
We find nothing unequivocal about defendant's choice, made after a full opportunity to discuss it with defense counsel. We do not agree that a reversal was warranted because defense counsel, rather than the trial court, informed defendant of his rights in light of the fact that the waiver was on the record and confirmed by the trial court.
*840 However, as the supreme court suggested in Tucker and Griffin, we agree that it would be preferable for the trial court to affirmatively advise defendant that he has a right to a six-member jury and that the trial court not leave the full explanation of that right and the consequences of waiving that right solely to defense counsel. The purpose of the trial court's inquiry is to confirm the voluntary and intelligent nature of the waiver and ensure that defendant is fully aware of the alternatives to proceeding with five jurors.

TAPED STATEMENTS
Defendant next argues that the unobjected-to admission of taped statements of several state witnesses which were not played in their entirety to the jury during trial but which were given to the jury to play during deliberations was fundamental error. Not only was the wholesale admission of these taped statements probably hearsay, but allowing the jury to have access to the taped statements during deliberations may have had the prejudicial effect of placing undue emphasis on the substance of the taped statements as compared to other testimony. See Young v. State, 645 So.2d 965, 967-68 (Fla.1994). However, allowing the taped statements into evidence and back to the jury room during deliberations did not constitute fundamental error so as to compel a reversal absent objection. See id.

BRIEFCASE AND ITS CONTENTS OBJECTION
Over a relevancy objection, the trial court admitted a briefcase and its contents (i.e., wires, screwdrivers, magnets, telephonic wire endings) shown to be defendant's property. Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury or needless presentation of cumulative evidence. § 90.403, Fla.Stat. (1993). The state contends that the briefcase and its contents were probative based on the inference that defendant probably planned to use the electronic equipment in the burglary, even if he may not have actually used it. However, because the state failed to show a nexus between the briefcase and its contents to the crimes charged in this case, the prejudicial effect of the items outweighed any probative value. See Huhn v. State, 511 So.2d 583 (Fla. 4th DCA 1987); Barrett v. State, 605 So.2d 560 (Fla. 4th DCA 1992).
There is nothing unlawful about keeping electronic equipment in a briefcase, and there was no direct connection between the electronic equipment and the crimes with which defendant was charged. Therefore, the evidence and testimony supported an improper implication that defendant was a career burglar and thus, must have committed these crimes. However, this issue also was not properly preserved. The record reflects that references to the briefcase and its contents were made repeatedly from opening statements through closing arguments without objection. Further, there was no pretrial motion in limine made to exclude reference to these items. Accordingly, at the point defendant raised a relevancy objection, following multiple references to and testimony about the briefcase and its contents, any possible prejudicial value would have been cumulative to the unobjected-to testimony already given. Additionally, defendant may have invited any error on this issue. Defense counsel appears to have tactically taken advantage of the references to and admission of these items by arguing that although the state had presented the briefcase as an important piece of evidence, the defense showed that it had no connection to the burglary and that all of the contents had an innocent purposethey were items used in an electronics course that defendant was taking.

VOICE "STRESS TESTS"
Defendant argues next that the prosecutor's unobjected-to, repeated references to the failure of the codefendants to pass voice stress tests was fundamental error. In effect, the jury was informed that until the codefendants implicated defendant in the crimes, they failed the voice stress tests. We question the scientific reliability of a voice stress test, the results of which we find comparable to a polygraph result, and *841 therefore apply the same logic underlying the inadmissibility of polygraph results. In Simeon v. State, 520 So.2d 81, 82 (Fla. 3d DCA 1988), the third district recognized that "any reference to the results of a polygraph examination, unfavorable to the defendant or favorable to a prosecution witness against him, is completely, usually fatally, and irreparably erroneous." In this case, indirectly referencing the voice stress tests resulted in the illegal buttressing with inadmissible testimony that the police had proven that the codefendants were lying early on when they denied knowledge of the incident, but not when they admitted knowledge and implicated defendant. However, because no objection was raised on this issue at trial below, this issue has not been properly preserved for appellate review.

CONVICTIONS FOR FIRST-DEGREE GRAND THEFT AND DEALING IN STOLEN PROPERTY
Defendant next contends, and the state concedes, that his adjudication and sentence for first-degree grand theft, which is theft of property valued at over $100,000 dollars, section 812.014(2)(a), Florida Statutes (1993), is unlawful because the jury never found that the value of the property stolen exceeded $100,000. We agree. On the grand theft charge, the jury was instructed:
If you find the defendant guilty of theft, you must determine by your verdict whether:
A) The value of the property taken was three hundred dollars or more.
B) The value of the property taken was less than three hundred.
C) The property was a motor vehicle.
At most then, the jury's specific finding was that the value of the property stolen was over $300not over $100,000. Thus, defendant should have been adjudicated guilty of grand theft in the third degree, rather than grand theft in the first degree.
Notwithstanding, this issue becomes moot on remand because defendant was improperly convicted for both theft and dealing in stolen property. The improper conviction does not arise from a violation of the double jeopardy clause because each offense has an essential element that the other lacks, thus satisfying the Blockburger test. See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Where the charges of theft and dealing in stolen property are included in one information and involve the same property, section 812.025, Florida Statutes (1993), has been interpreted to preclude convictions for both charges in connection with one scheme or course of conduct. See Rife v. State, 446 So.2d 1157 (Fla. 2d DCA 1984); Burrell v. State, 601 So.2d 628, 630 (Fla. 2d DCA 1992).
In the instant case, the information charged defendant with stealing jewelry on one date and dealing the same jewelry on the same date or sometime thereafter. The state has not been able to prove that the theft of jewelry and the dealing of that same jewelry were distinct and unrelated criminal incidents. While we recognize that additional acts will always be required to dispose of the property in question, the legislative purpose of the section is to prevent dual convictions in connection with one scheme or course of conduct. Absent something more to purposefully interrupt the two crimes by an unquestionably disjunctive period of time or series of events, defendant's conviction for one of the offenses must be set aside. Because the state convinced the jury beyond a reasonable doubt that defendant was guilty of both dealing in stolen property, a felony of the second degree, section 812.019(1), Florida Statutes (1993), and grand theft in the third degree, a felony of the third degree, section 812.014(2)(c), subject to less punishment, we reverse the less serious conviction of grand theft in the third degree. Ridley v. State, 407 So.2d 1000 (Fla. 5th DCA 1981).

RESTITUTION
This error, however, does not affect the restitution order requiring defendant to pay $500,000. Even if defendant could be ultimately convicted on the theft count, we would not be required to limit the amount of restitution to $300, the statutory limit for petit theft, because there is damage or loss caused indirectly by the theft, see Peralta v. State, 596 So.2d 1220 (Fla. 5th DCA 1992), *842 and there is damage or loss caused directly or indirectly by the burglary, the conspiracy to commit burglary or the dealing in stolen property, see Bell v. State, 652 So.2d 1192 (Fla. 4th DCA 1995), charges that, unlike theft, have no statutory maximums. The trial court properly imposed restitution for the actual damages caused by defendant's crimes, for which he will remain convicted.
Concerning the issue of restitution, we additionally find no merit in defendant's argument that it was reversible error for the trial court to impose restitution without considering his present means and future ability to pay. Based upon the applicable statute, subsection 775.089(1)(a), Florida Statutes (1993), a trial court shall order a defendant to pay restitution to crime victims absent clear and compelling reasons not to so order. Subsection (7) places upon the state the burden of demonstrating the amount of the loss sustained, and upon the defendant the burden of demonstrating his financial circumstances. See Bolling v. State, 631 So.2d 310 (Fla. 5th DCA 1994); Cheatham v. State, 593 So.2d 270 (Fla. 4th DCA 1992). In Butts v. State, 575 So.2d 1379 (Fla. 5th DCA 1991), the fifth district held that a defendant must object to a proposed order of restitution and present evidence of his inability to pay at the time restitution is ordered; otherwise, the issue of failure to determine ability to pay will be deemed waived. In this case, having failed to affirmatively assert his rights under subsection 775.089(7), defendant has waived the issue of ability to pay.

SENTENCE OF INCARCERATION AND PROBATION
Finally, we find no merit in defendant's contention that his sentence combining incarceration and probation was illegal. Defendant's permitted sentencing range called for "any nonstate prison sanction or community control or 1-3½ years incarceration." He was sentenced to three and one-half years in the Department of Corrections followed by eleven and one-half years probation. Defendant contends that this sentencing scheme violates the rule in State v. VanKooten, 522 So.2d 830 (Fla.1988), wherein the supreme court held that when a presumptive guidelines sentence directs community control or incarceration, the imposition of both represents a departure from the guidelines and requires proper written reasons. Accord State v. Davis, 630 So.2d 1059 (Fla.1994). In effect, defendant urges us to extend the holding in VanKooten to apply to a sentence such as he received. We disagree that VanKooten controls this case. In VanKooten, the supreme court addressed the guidelines only as they relate to imposition of a sentence combining incarceration and community control. To hold as defendant suggests would prohibit trial courts from sentencing a defendant to a term of prison followed by probation, unless the defendant scored so high on the sentencing guidelines as to fall into a permitted or recommended range based only on a term of years.
The facts before us involve a sentence consisting of a prison term falling within the guidelines range and an additional probation term which brings the sentence within the fifteen-year statutory maximum for burglary of an occupied structure, a second-degree felony. § 810.02(1)(3), Fla.Stat. (1993); § 775.082(3)(c), Fla.Stat. (1993). Florida Rule of Criminal Procedure 3.701(d)(12) states, in part, that "the total sentence cannot exceed the total guideline sentence unless a written reason is given." The accompanying committee note on that rule provides:
If a split sentence is imposed (i.e., a combination of state prison and probation supervision), the incarcerative portion imposed shall not be less than the minimum of the guideline range nor exceed the maximum of the range. The total sanction (incarceration and probation) shall not exceed the term provided by general law.
In this case, the sentence clearly met these requirements.

CONCLUSION
We affirm the convictions for burglary of an occupied structure, dealing in stolen property and conspiracy to commit burglary. We reverse the conviction for grand theft and remand for resentencing consistent with this opinion. We further certify the following questions to the Florida Supreme Court:

*843 Do the Florida and United States Constitutions permit a defendant to waive his right to a six-member jury and agree to be tried by a five-member jury in a criminal case?
To have a valid oral waiver of the right to a six-member jury in a criminal case, is it necessary for the trial court to conduct an on-the-record inquiry with the defendant where the trial court advises the defendant of his constitutional right to a six-member jury and gives a full explanation of the consequences of the waiver of that right?
SHAHOOD, J., concurs.
PARIENTE, J., concurs in part and dissents in part with opinion.
PARIENTE, Judge, concurring in part and dissenting in part.
I agree with the majority's reasoning on all issues except the issue of whether defendant's mid-trial agreement to allow the case to proceed with five jurors constituted a voluntary, knowing and intelligent waiver of defendant's constitutional right to a six-person jury.[1] Clearly the record reflects that defendant, with advice of counsel, agreed to "go with five." Yet just as clearly, the record is devoid of any indication that defendant was aware he was relinquishing a constitutional right to trial by a jury of six persons. Without knowledge of the right, there can be no knowing and intelligent waiver.
For a waiver to be valid under the due process clause there must be "an intentional relinquishment or abandonment of a known right or privilege." Boykin v. Alabama, 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 1712 n. 5, 23 L.Ed.2d 274, 280 n. 5 (1969), and cases cited therein. The key phrase here is "known right." Thus without having been informed of his constitutional right, there is no basis for finding, as the majority has in this case, that defendant's agreement to proceed with a five-member jury is equivalent to a knowing and intelligent waiver. It is well-settled that in reviewing a case involving waiver of a constitutional right, courts are to "indulge every reasonable presumption against waiver." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938), and cases cited therein.
In Tucker v. State, 559 So.2d 218 (Fla. 1990), our supreme court held that a defendant represented by counsel may orally waive a jury trial "if a full explanation of the consequences is given by the trial judge." See also State v. Upton, 658 So.2d 86 (Fla. 1995). Our supreme court thus upheld an oral, on-the-record waiver of a jury trial by a defendant without a written waiver where the record showed that "the trial judge appropriately questioned [the defendant] in open court about his choice to proceed without a jury" and made an adequate inquiry into the waiver. Tucker, 559 So.2d at 220. Tucker explained that "an appropriate oral colloquy will focus a defendant's attention on the value of a jury trial and should make a defendant aware of the likely consequences of the waiver." Id.
Following Tucker, it was incumbent on the trial court, at a minimum, to affirmatively advise defendant that he had a constitutional right to a six-member jury and to confirm his understanding of that right. Here, the trial court may have thought that the affirmative duty to make a record inquiry was fulfilled when it had defense counsel explain the alternatives to defendant again. However, conspicuously absent from the record is any mention that defendant was advised of his constitutional right to a trial by jury of six members and the consequences of waiving that right.
The majority cites Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), for the proposition that a defendant can consent to a trial by fewer than the required number of jurors. See also Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). However, the Supreme Court cautioned:
Not only must the right of the accused to a trial by a constitutional jury be jealously *844 preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

Patton, 281 U.S. at 312-13, 50 S.Ct. at 263, 74 L.Ed. at 870 (emphasis supplied). Our supreme court expressly adopted the Patton decision in Zellers v. State, 138 Fla. 158, 189 So. 236 (1939). See Tucker, 559 So.2d at 218.
Because the decision involved the mid-trial oral waiver of a valuable constitutional right, the trial court could not, consistent with Tucker, dispense with its affirmative duty to inquire. The purpose of a trial court's inquiry is to advise the defendant of the right he or she is relinquishing, to confirm directly with the defendant on the record the voluntary, knowing and intelligent nature of the waiver, to verify that the waiver is not a product of implicit or explicit pressures or expediency and to insure that the defendant is fully aware of the alternatives before agreeing to proceed with five jurors. The failure of the trial court to conduct this inquiry and thus obtain a voluntary, knowing and intelligent waiver from defendant in my opinion requires a reversal.
It causes me additional concern that the option of "going with five" was initiated by the trial court and presented as an alternative on equal footing with a continuance before fully exploring the alternatives of either a short continuance or requiring the sixth juror to remainalternatives without constitutional implications. Moreover, it appears from the record that defendant was led to believe that a mistrial was a possible consequence if he refused to allow the case to proceed with five jurors. In reality, a mistrial was not a possibility at that time because there was no manifest necessity. See Thomason v. State, 620 So.2d 1234 (Fla.1993); Perkins v. Graziano, 608 So.2d 532 (Fla. 5th DCA 1992).
Beyond the fact that defendant was not informed of his constitutional right to a six-member jury or the consequences of waiver, the inquiry was inadequate, and that defendant was misinformed as to the possibility of mistrial, there are further concerns here. A defendant in the middle of a criminal trial is faced with the inherent pressure of simply wanting the case over and done with.[2] Accordingly, I suggest that another reason dictating that the trial court should conduct the inquiry would be to ensure that the defendant is not sacrificing a constitutional right for the sake of expediency, especially where as here, either a short continuance or requiring the juror to remain on the jury were viable alternatives which would not in any way implicate defendant's constitutional rights.
Finally, the consequences of waiving the constitutional right to a six-member jury by agreeing to allow five jurors to decide his fate may be even less obvious to a defendant than the decision to waive a jury trial altogether in favor of a non-jury trial. This is further reason why an appropriate inquiry is critical to a knowing and intelligent waiver. A review of Ballew v. Georgia, 435 U.S. 223, 239, 98 S.Ct. 1029, 1038, 55 L.Ed.2d 234, 246 (1978), is essential to an understanding of the potential significance of defendant's decision "to go with five." In Ballew, the Supreme Court determined that any further reduction below six members could not pass constitutional muster,[3] rejecting as unconstitutional *845 Georgia's practice of allowing five-member juries. It held that "the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members." Id.
In Ballew, the majority reviewed the findings of many scholarly studies on juries which raised doubts about the accuracy of results achieved by smaller jury panels. It noted research finding that smaller juries are less likely to foster effective group deliberation and empirical data showing that the risk of convicting innocent persons rises as the size of the jury diminishes. While readily admitting that it could not discern a clear line between six-member juries and five-member juries, the Court concluded that:
[T]he assembled data raise substantial doubt about the reliability and appropriate representation of panels smaller than six. Because of the fundamental importance of the jury trial to the American system of criminal justice, any further reduction that promotes inaccurate and possibly biased decisionmaking, that causes untoward differences in verdicts, and that prevents juries from truly representing their communities, attains constitutional significance.
435 U.S. at 239, 98 S.Ct. at 1038-39, 55 L.Ed.2d at 246.
I realize that trial courts often feel burdened by the multitude of decisions by appellate courts which impose more and more procedures to follow in all phases of criminal trials from voir dire to sentencing. Trial courts are also pressured by the state and by the county to economize on the number of jurors. Thus, a decision to try a case with five jurors may be seen as one more aspect of an expedient and efficient criminal justice system. But that practice is just what the Supreme Court in Ballew declared unconstitutional.
The constitutional mandate of a six-person jury and the requirement of obtaining a knowing, voluntary and intelligent waiver before accepting a defendant's agreement to be tried by fewer than six jurors is not one more technical requirementit goes to the essence of the defendant's fundamental rights in a criminal trial. Because of this, before finding a valid waiver in a mid-trial reduction to five jurors, I would adopt a modification of the Flanning prerequisites, see Flanning v. State, 597 So.2d 864, 867-68 (Fla. 3d DCA 1992), and require that:
1) the decision to go with less than six jurors be initiated by the defendant, not the judge or prosecutor;
2) before entertaining this possibility the trial court should assure itself that it has exhausted all viable scheduling options and alternatives with the six-member jury;
3) after giving defendant a reasonable time to consult with counsel, the trial court on the record should carefully explain to the defendant his or her constitutional right to a six-member jury and the consequences of waiving that right; and
4) the trial court should question the defendant directly to determine whether the waiver is being made knowingly and voluntarily and not as a result of any perceived pressure from the court.
The state argues that the strict requirements of Flanning were necessary in that case, but not here, because there are more dangers inherent in a verdict reached by five out of six jurors than in a unanimous verdict of a five-member panel. However, that argument misses the point that in both cases we are dealing with waivers of important rights during trial and, in the case of a six-member jury, one expressly embodied in our state constitution. While the dangers and pressures may be different, the guaranteed rights should be no less jealously guarded by our courts.
This right to a jury comprised of a minimum of six members is expressly guaranteed by the Florida Constitution and by the United States Constitution through United States Supreme Court precedent.[4] Without a *846 knowing and intelligent waiver of this right, a verdict rendered by a five-juror panel is constitutionally infirm.
A review of the record indicates that defendant was never affirmatively made aware of his constitutional right to a six-member jury and may have been affirmatively misled into believing that a mistrial was a possibility, when it was not. Defendant may have wanted just to get the trial over with, or, because the suggestion was initiated by the trial court, may have felt implicitly pressured by the trial court. The record before us merely demonstrates that defendant consented to "go with five." The record, however, falls far short of demonstrating that an appropriate inquiry under Tucker occurred and that defendant voluntarily, knowingly and intelligently waived his constitutional right. I would therefore reverse for a new trial. I agree with the certified questions raised by the majority.
NOTES
[1] I would seriously question, however, whether the number of jurors could fall below five and still constitute a legal jury, even with the defendant's voluntary, knowing and intelligent waiver. Compare Flanning v. State, 597 So.2d 864 (Fla. 3d DCA), review denied, 605 So.2d 1266 (Fla. 1992).
[2] Here the record shows that defense counsel also wanted the case over and done with because he had obligations in another case in another part of the state later in the week.
[3] In Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446, 460 (1970), the Supreme Court upheld the constitutionality of reducing juries from twelve to six, after noting that the Sixth Amendment mandates a jury of sufficient size to promote group deliberation, to insulate members from outside intimidation and to provide a cross-section of the community.
[4] In Florida the right to a jury in a criminal case of no less than six jurors is guaranteed by the express terms of our constitution. See Art. I, § 22, Fla. Const. The number of jurors guaranteed under the United States Constitution has been established by United States Supreme Court precedent. See Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446, 460 (1970); Ballew v. Georgia, 435 U.S. 223, 239, 98 S.Ct. 1029, 1038, 55 L.Ed.2d 234, 246 (1978).