698 So.2d 1210 (1997)
Lance H. BLAIR, Petitioner,
v.
STATE of Florida, Respondent.
No. 87509.
Supreme Court of Florida.
August 28, 1997.
Richard L. Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Robert A. Butterworth, Attorney General; Georgina Jimenez-Orosa, Senior Assistant Attorney General, Bureau Chief; and Michelle A. Konig and Sharon A. Wood, Assistant Attorneys General, West Palm Beach, for respondent.
*1211 ANSTEAD, Justice.
We have for review Blair v. State, 667 So.2d 834 (Fla. 4th DCA 1996), a case for which we accepted jurisdiction to answer the following questions which were certified to be of great public importance:
DO THE FLORIDA AND UNITED STATES CONSTITUTIONS PERMIT A DEFENDANT TO WAIVE HIS RIGHT TO A SIX-MEMBER JURY AND AGREE TO BE TRIED BY A FIVE-MEMBER JURY IN A CRIMINAL CASE?
TO HAVE A VALID ORAL WAIVER OF THE RIGHT TO A SIX-MEMBER JURY IN A CRIMINAL CASE, IS IT NECESSARY FOR THE TRIAL COURT TO CONDUCT AN ON-THE-RECORD INQUIRY WITH THE DEFENDANT WHERE THE TRIAL COURT ADVISES THE DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO A SIX-MEMBER JURY AND GIVES A FULL EXPLANATION OF THE CONSEQUENCES OF THE WAIVER OF THAT RIGHT?
Id. at 843. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the first certified question in the affirmative, the second question in the negative, and approve the decision under review.

MATERIAL FACTS
Lance H. Blair was charged by information with burglary while armed, conspiracy to commit burglary and grand theft, dealing in stolen property, and firearm violations. At trial, six jurors and one alternate were selected and sworn to hear the case. Shortly thereafter, the trial court excused one juror for neglect, seating the alternate as the sixth juror.
On the afternoon of the trial's fourth day, a Friday, after the State had presented most of its evidence, the court informed the jury that the trial would last longer than anticipated. The court asked if this would cause "terrible problems for anyone ... anything that can't be rescheduled?" Juror six stated that he had to give a five-day out-of-state seminar and could not return until the following Wednesday. Defense counsel noted a problem with another client, but the court stated that would not take precedence over Blair's jury trial. After discussing scheduling alternatives, including continuing the case until ten days later, another juror expressed reservations about the delay.
Thereafter, a side-bar conference ensued where the following colloquy took place:
The Court: A possible resolution, go with five.
Mr. Brown [Defense Counsel]: What if both sides agree to go with five?
The Court: That's fine with me.
Mr. Lawson [Prosecutor]: Judge, the State is willing to go along with that.
Mr. Brown: Let me tell you in thirty seconds [sic] to discuss it with my client because I don't think it would be fair.
The Court: All right.
The judge then excused the jury from the courtroom, and the following colloquy took place in Blair's presence:
The Court: All right. It is my understanding that both attorneys will stipulate that we can excuse juror number six who is Thomas Murray and we will try this case with five jurors and be bound....
Mr. Lawson: Judge, I will go along with that. I have only one request and that is that Mr. Murray put it on the record.
The Court: I am going to do that but first I've got to explain to Mr. Blair what we are considering.
Mr. Lawson: Okay.
The Court: And then, whatever decision they make will be binding on the Court and on the Defendant. I am going to give you as much time as you need now to discuss that possibility with your client, Mr. Brown.
Mr. Brown: I have already discussed it with him and as opposed to postponing it a week or having a possible mistrial, we would rather go with five and I quickly tried to explain [to] him the alternative.
The Court: All right. Let me have [you] explain them again. I want to make sure that this is what he wants to do.

*1212 Mr. Brown: Well, I told him there is a potential for a mistrial. There also is, as the Court has suggested, postponing it a full week until February 1st and I have to admit I didn't tune in to what other [juror's] problem is going to be, something about an owner coming to town.
The Court: Well, he didn't sound terrifically serious to me.
Mr. Brown: Well, there are other possibilities of postponing it for a full week and starting it up again February 1st or going with five jurors. I see that as the three alternatives. I'm sure my client doesn't want a mistrial. So, that leaves us with two alternatives, either February 1st starting off again a week later or going with five jurors.
The Defendant: Your Honor, we will take the five, if that's all right with you.
The Court: All right. We will do that then.
The court then excused juror number six and proceeded with the remaining five jurors. Blair was subsequently found guilty by the jury of burglary of an occupied structure, grand theft, dealing in stolen property and conspiracy to commit burglary.
On appeal, the Fourth District affirmed all of Blair's convictions except for the grand theft conviction and remanded for resentencing. The court found that Blair's waiver of his right to a full six-person jury was valid. Blair, 667 So.2d at 839.[1]

RIGHT TO TRIAL BY JURY
Before addressing the facts of this case, we review and reaffirm the importance of the right to trial by jury in the United States and Florida. From the outset, the earliest American colonists "cherished the right to a trial by jury." Douglas E. Lahammer, Note, The Federal Constitutional Right to Trial by Jury for The Offense of Driving While Intoxicated, 73 Minn. L.Rev. 122, 125 n. 19 (1988). As evidence of this strong sentiment, the right to trial by jury was incorporated into King James I's Instructions for the Government of the Colony of Virginia, 1606; the Massachusetts Body of Liberties, 1628; the Concessions and Agreements of West New Jersey, 1677; and the Frame of Government of Pennsylvania, 1682. Lloyd E. Moore, The Jury, Tool of Kings, Palladium of Liberty 97-99 (1973); Sources of Our Liberties 37, 74, 185, 217 (Richard L. Perry ed., 1959).
Later, this right was of paramount importance to the Founding Fathers. Indeed, "[t]rial by jury, as instituted in England, was to the Founders an integral part of a judicial system aimed at achieving justice." Colleen P. Murphy, Integrating the Constitutional Authority of Civil and Criminal Juries, 61 Geo. Wash. L.Rev. 723, 742 (1993). Accordingly, the Founders, mindful of "royal encroachments on jury trial" and fearful of leaving this precious right to the whims of legislative prerogative, included protection of the right in the Declaration of Independence[2] and included three separate provisions in the Constitution for the right to jury trial: Article III[3] and later the Sixth[4] and *1213 Seventh[5] Amendments. Id. at 744-45. In addition, the "constitutions of the original 13 states and of every state later admitted to the United States contained some form of a jury trial right." Robert P. Connolly, Note, The Petty Offense Exception and the Right to a Jury Trial, 48 Fordham L.Rev. 205, 212 n. 51 (1979). No state has ever removed the right from its constitution. Duncan v. Louisiana, 391 U.S. 145, 153-54, 88 S.Ct. 1444, 1449-50, 20 L.Ed.2d 491 (1968). The right extends equally to criminal and civil cases, except in Louisiana, Colorado, and Wyoming, which only guarantee the right to trial by jury in criminal cases. See Henry H. Perritt, Jr., "And the Whole Earth Was of One Language "A Broad View of Dispute Resolution, 29 Vill. L.Rev. 1221, 1320 n. 554 (1984); art. I, § 17, La. Const.; art. II, § 23, Colo. Const.; art. I, § 9, Wyo. Const.

FLORIDA
In Florida, we also have always considered the right to jury trial an indispensable component of our system of justice. In addition to the federal constitutional mandate,[6] our state constitution's Declaration of Rights expressly provides that the "right of trial by jury shall be secure to all and remain inviolate." Art. I, § 22, Fla. Const. Similarly, this Court has acknowledged that "a defendant's right to a jury trial is indisputably one of the most basic rights guaranteed by our constitution." State v. Griffith, 561 So.2d 528, 530 (Fla.1990); see also Floyd v. State, 90 So.2d 105, 106 (Fla.1956) (stating that "right of an accused to trial by jury is one of the most fundamental rights guaranteed by our system of government").
Further, and unlike the United States Constitution, the Florida Constitution specifies a minimum numbers of jurors. In guaranteeing that the "right of trial by jury shall be secure to all and remain inviolate," the Florida Constitution requires that "not fewer than six" jurors constitutes a legal jury. Art. I, § 22, Fla. Const.; State v. Griffith, 561 So.2d 528, 530 (Fla.1990) (stating that trial by six-person jury is "mandated by the constitution in article I, section 22, Florida Constitution").
In Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the United States Supreme Court held that six-person juries in state criminal trials did not violate the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments. See also Colgrove v. Battin, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (same holding regarding Seventh Amendment right to trial in a civil case). On the other hand, the Court held in Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), that a state must provide a criminal defendant with a jury composed of no fewer than six persons.

WAIVER
It has long been acknowledged by federal and state courts that a defendant may waive constitutional rights, Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), including the right to trial by jury, Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); accord Zellers v. State, 138 Fla. 158, 189 So. 236 (1939) (expressly adopting Patton), so long as the waiver is knowing, intelligent, and voluntary. Tucker v. State, 559 So.2d 218, 219 (Fla.1990) (citing Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).
In Boykin, the defendant was charged with five counts of common law robbery, a capital offense in Alabama at the time. 395 U.S. at 239, 89 S.Ct. at 1710. As an indigent, Boykin received appointed counsel prior to trial and, at arraignment, he pled guilty to all five counts. Subsequently, a jury found Boykin *1214 guilty and sentenced him to death.[7]Id. at 240, 89 S.Ct. at 1710-11. Although the Alabama Supreme Court affirmed his convictions, three dissenting justices and one in concurrence raised concerns over whether Boykin had knowingly, intelligently and voluntarily pled guilty. Id. at 241, 89 S.Ct. at 1711. The United States Supreme Court granted review and found that "the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." Id. at 239, 89 S.Ct. at 1710. The Court noted that at least three important federal constitutional rights are implicated when a guilty plea is entered in a state court: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. All are waived when a defendant pleads guilty. Id. at 243 n. 5, 89 S.Ct. at 1712 n. 5 (citations omitted). The Court stated that it would not "presume a waiver of these three important federal rights from a silent record." Id. The Court held that a waiver is valid under the Due Process Clause only if it is "an intentional relinquishment or abandonment of a known right or privilege." Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Thus, the Court concluded that it "was error, plain on the face of the record, for the trial judge to accept [Boykin's] guilty plea without an affirmative showing that it was intelligent and voluntary." Id. at 242, 89 S.Ct. at 1711 (emphasis added).
In Tucker v. State, 559 So.2d 218 (Fla. 1990), this Court upheld an oral waiver of a jury trial in open court although a written waiver was technically required by our rules of criminal procedure. 559 So.2d at 220.[8] We expressly noted in Tucker the trial judge's questioning of the defendant "in open court about his choice to proceed without a jury," 559 So.2d at 220, and held that the colloquy was sufficient. We reasoned that an "appropriate oral colloquy will focus a defendant's attention on the value of a jury trial and should make a defendant aware of the likely consequences of the waiver." Id. at 220. In conclusion, we stated:
Although we approve the district court's decision and decline to grant Tucker relief, we emphasize that it is better practice for trial courts to use both a personal on-the-record waiver and a written waiver. An appropriate oral colloquy will focus a defendant's attention on the value of a jury trial and should make a defendant aware of the likely consequences of the waiver. If the defendant has been advised by counsel about the advantages and disadvantages of a jury trial, then the colloquy will serve to verify the defendant's understanding of the waiver. Executing a written waiver following the colloquy reinforces the finality of the waiver and provides evidence that a valid waiver occurred. Because the waiver of a fundamental right must be knowing and intelligent, the above-stated practice better promotes the policy of recognizing only voluntary and intelligent waivers.
Id. On the other hand, in State v. Upton, 658 So.2d 86, 88 (Fla.1995), we found an attempted waiver of a jury trial by only an attorney invalid since "no affirmative showing on the record establish[ed] that Upton agreed with the waiver his attorney had signed".

WAIVER OF FULL TWELVE-PERSON JURY
In Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), the Supreme *1215 Court addressed the issue of whether a defendant could waive the right to a twelve-person jury and consent to a trial by an eleven-person jury. In Patton, a trial was commenced with a twelve-person jury and continued until one of the jurors became severely ill. Thereupon, the parties stipulated in open court to proceed with a trial by the remaining eleven jurors. Id. at 286, 50 S.Ct. at 254. The defendants personally assented to the reduced jury. The trial court acquiesced after noting that the parties "were entitled to a constitutional jury of twelve," and a mistrial would be ordered unless both sides waived all objections and agreed to continue with the eleven-person jury. Defense counsel stated on the record that he had conferred with each defendant and it was their desire to go with the reduced jury. Subsequently, the defendants were convicted.
On appeal, the defendants claimed that the constitutional right to a twelve-person jury could not be waived. Id. at 287, 50 S.Ct. at 254. The federal circuit court deferred consideration of the case and certified the question directly to the Supreme Court.[9] The Supreme Court concluded that a criminal defendant had the power "to waive a trial by a constitutional jury and submit to trial by a jury of less than twelve persons." Id. at 312, 50 S.Ct. at 263. However, the Court cautioned that:
Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in gravity as the offenses dealt with increase in gravity.
Id. at 312-13, 50 S.Ct. at 263.[10] The Court approved of the waiver in Patton.
This Court has also approved of the waiver of a twelve-person jury and permitted a trial by a six-person jury in a capital case, where the State waives the right to seek the death penalty and the parties stipulate to the smaller jury. See State v. Mustelier, 561 So.2d 533 (Fla.1990); State v. Rodriguez-Acosta, 561 So.2d 531 (Fla.1990); State v. Jones, 561 So.2d 532 (Fla.1990); State v. Enriquez, 572 So.2d 515 (Fla.1990). In those cases we held that the waiver was effective even if counsel, rather than the defendant personally, waived the twelve-person jury on behalf of his client after consulting with him and obtaining his consent to the waiver.

WAIVER OF SIX-PERSON JURY
While acknowledging the case law approving a waiver of the right to a jury trial as discussed above, Blair asks us to conclude that the right to a six-member jury in a criminal case cannot be waived. Blair relies principally upon the decision and analysis in Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), where the United States Supreme Court addressed the constitutionality of a five-person jury mandated by Georgia law. Id. at 226, 98 S.Ct. at 1031-32.
Ballew objected to the five-person jury mandated by law and unsuccessfully moved for a twelve-person jury. Id. at 227, 98 S.Ct. at 1032. Upon review, and after consulting numerous scholarly studies on jury size, the *1216 United States Supreme Court invalidated the five-person jury scheme and concluded:
[T]he purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members. We readily admit that we do not pretend to discern a clear line between six members and five. But the assembled data raise substantial doubt about the reliability and appropriate representation of panels smaller than six. Because of the fundamental importance of the jury trial to the American system of criminal justice, any further reduction that promotes inaccurate and possibly biased decision making, that causes untoward differences in verdicts, and that prevents juries from truly representing their communities, attains constitutional significance.
Id. at 239, 98 S.Ct. at 1038-39. In its analysis, the Court identified five issues of concern regarding the wisdom and constitutionality of a reduction in jury size below six. Id. at 232, 98 S.Ct. at 1035.
The Court presented a compelling case for its conclusion that the states must provide a criminal defendant with at least a six-person jury. The Court explained that the studies indicated progressively smaller juries are less likely to foster effective group deliberation; raised doubts about the accuracy of the results achieved by smaller and smaller panels; suggested that the verdicts of jury deliberation in criminal cases will vary as juries become smaller and that the variance inordinately disfavored the defense; found a decreasing presence of minority viewpoints, i.e., jurors unconvinced of guilt, in smaller juries (lessening chances of hung juries); and identified methodological problems tending to mask differences between the operation of smaller and larger juries. Id. at 232-37, 98 S.Ct. at 1035-38. Interestingly, this analysis and the social studies on jury size and small group dynamics cited by the Court also provided support for the traditional twelve-person jury, a requirement the Court had refused to mandate in Williams v. Florida.
The State, while acknowledging the reasoning of Ballew, contends that its analysis is inapplicable here where Blair knew exactly how many and which jurors he was getting. The State contends these circumstances distinguish this case from Ballew and that Court's concern that a mandatory five-person jury might impair a defendant's chance of getting a jury representative of a fair cross-section of the community. We agree with the State.
Waiver was not an issue in Ballew, a distinction we consider determinative. Unlike the situation in Ballew, a five-person jury was not imposed upon Blair over his objection or mandated by Florida law. This crucial distinction between a mid-trial waiver by the defendant of a full six-person jury, as opposed to the imposition of a five-person jury by the state, leads us to conclude that Ballew should not control the outcome here. Of the authorities discussed above, we find the reasoning of Patton, as well as our own decisions permitting a six-person jury in capital cases where the death penalty has been waived, most persuasive here.
The Patton court concluded that criminal defendants have the power "to waive a trial by a constitutional jury and submit to trial by a jury of less than twelve persons." 281 U.S. at 312, 50 S.Ct. at 263. Blair was in virtually the same situation as Patton, albeit with a six-member jury as mandated by our state constitution. While we recognize that the waiver in Patton was from twelve to eleven, rather than six to five, we believe the principle is essentially the same: the right to waive and accept less than the law provides. Further, while acknowledging the strong case for a six-person minimum made in Ballew, we also note that Court's observation that there was no magic ingredient in the number six but that a line must be drawn somewhere in defining the jury that a state must provide to a defendant entitled to a jury trial.
At issue here is not the content of the constitutional right to a jury of a particular size. That is not in dispute. Both the Florida Constitution and Ballew place that number at six, and it is undisputed that Florida has provided Blair with the right to a six-person jury. The question here, however, is whether the right, once defined, may be waived, in whole or in part. As noted in the discussion above, it has been universally acknowledged *1217 that the right to a jury trial may be waived entirely. That being so, it would be anomalous indeed to hold that a defendant could waive an entire jury, but not waive the presence of one juror. Based upon the analysis in Patton, we conclude that there is no constitutional bar to a defendant's waiver of the presence and participation of one of the six jurors in a criminal trial.

SUFFICIENCY OF WAIVER
The second certified question presents, perhaps, the more difficult question of the sufficiency of a defendant's waiver and the trial court's proper role in ensuring that the defendant's constitutional rights are honored. The cases discussed above involving waiver have required safeguards commensurate with the nature and extent of the rights in question and the circumstances under which the waiver is alleged to have occurred. The cases have mandated extensive safeguards in the entry of pleas in criminal cases where numerous rights are implicated, while imposing less stringent requirements in other situations, including allowing attorneys to act for their clients in some instances. Again, we look to Patton for the proper analysis and conclude that a full-blown colloquy such as that provided in accepting a guilty plea is not absolutely necessary. Rather, we find the colloquy at issue here, including a personal on-the-record waiver, sufficient to pass muster under the federal and state constitutions.
Initially, it is important to reiterate that we are not confronted with a situation involving the complete waiver of a trial by jury. Blair's case was tried by a jury, albeit one reduced in size from six to five. Further, in accepting Blair's decision, we agree with the district court's conclusion that the trial court observed the standards enunciated in Patton by exercising "sound and advised discretion" in sanctioning the waiver after consultations with counsel and the defendant, ensuring the State agreed to the waiver, and confirming the "express and intelligent consent of the defendant." 281 U.S. at 312, 50 S.Ct. at 263. As in Patton, the record reflects that the trial judge ensured that Blair was apprised of the alternative courses of action available to him and had enough time to make a considered decision, and confirmed that this was the option Blair wished to elect. Blair made his decision toward the end of his trial, after having ample time to analyze the jury and assess the prosecution's case against him. He affirmatively chose to proceed with a reduced jury as opposed to a continuance or starting with another jury.[11]
We also agree with the district court that there was no constitutional infirmity in having defense counsel advise Blair of his rights so long as the trial court "confirm[ed] the voluntary and intelligent nature of the waiver and ensure[d] that [Blair was] fully aware of the alternatives to proceeding with five jurors." Blair, 667 So.2d at 840. Moreover, the district court majority correctly noted that the trial judge ensured that defense counsel had enough time to talk to Blair. Id. at 839. Thereafter, Blair directly communicated with the court, stating, "Your Honor, we will take the five, if that's all right with you." Id. at 837. We concur with the majority's conclusion that the waiver was valid since there was "nothing unequivocal [sic],"[12], id. at 839, about Blair's choice to "take the five" jurors, especially after the judge had defense counsel repeat in open court what he had said to Blair privately. See United States v. Page, 661 F.2d 1080, 1083 (5th Cir.1981), cert. denied, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 136 (1982) (affirming trial court's acceptance of defense counsel's assurances that defendant wished to waive jury trial after lengthy consultation); United States v. Agee, 83 F.3d 882, 886 n. 5 (7th Cir.1996) (explaining when "there is a direct and specific discussion between defense counsel and the trial court regarding the waiver, the court can make the inquiries necessary to be confident that the defendant *1218 understood the right he or she was waiving and willingly relinquished it"). Thus, while the colloquy may not have been a perfect example of a knowing, intelligent, and voluntary waiver of a constitutional right, we conclude that Blair's personal on-the-record waiver, after consultation with counsel, provided a sufficient procedural safeguard to affirmatively show that Blair understood his rights and the options available to him.
The majority below also noted our reasoning in Tucker and State v. Griffith, 561 So.2d 528, 531 n. 5 (Fla.1990) (finding that although defendant's waiver of a twelve-person jury in favor of a six-person jury was valid and did not require court's affirmative inquiry, it is a "better procedure for the trial court to make an inquiry of the defendant and to have the waiver appear on the record"), agreeing "that it would be preferable for the trial court to affirmatively advise defendant that he has a right to a six-member jury and that the trial court could not leave the full explanation of that right and the consequences of waiving that right solely to defense counsel." Blair, 667 So.2d at 840. Similarly, we note that while the trial judge did not question Blair directly as the judge did in Tucker, and the discussion was not as extensive as it could have been, Blair was present throughout the proceedings and ultimately told the judge personally and directly that he wished to proceed with five jurors.
Further, with the concurrence of the trial court and the State, Blair exercised his "right to have [a] trial completed by a particular tribunal," Thomason v. State, 620 So.2d 1234, 1237 (Fla.1993), and we are reluctant to interfere with that choice absent some misapplication of the law, constitutional violation, or fundamental error. Our decision in Thomason addressed the impropriety of the trial court's declaration of a mistrial over the objections of both the defendant and the State. 620 So.2d at 1235. In finding that "absent circumstances thwarting the State's one full and fair opportunity to present its case, the right of a defendant to completion of his or her trial by a particular tribunal should control," id. at 1237, we expressed particular concern with the fact that "the trial judge ignored the wishes of the defendant, who had the right to have his trial completed by the jury that had been sworn." Id. at 1239. See also Dumas v. State, 439 So.2d 246, 253 n. 8 (Fla. 3d DCA 1983) (en banc) (reasoning that since defendants have fundamental right to jury trial, infringement of right is fundamental error), review denied, 462 So.2d 1105 (Fla.1985). From the record it appears that Blair chose among several options and made an informed tactical decision to take his chances with this particular jury. The fact that Blair did not get the result he desired does not make his waiver any less valid or render his five-person jury constitutionally infirm.

CONCLUSION
After considering these facts, we conclude that Blair's action here was sufficient to constitute a knowing, intelligent, and voluntary waiver of his right to a six-member jury. In so holding, we underscore that the unique facts of this case and the procedural safeguard of Blair's on-the-record personal waiver after consultation with counsel are essential to our decision. See State v. Singletary, 549 So.2d 996, 997 (Fla.1989) (requiring a defendant's on-the-record waiver for "those rights which go to the very heart of the adjudicatory process, such as the right to a lawyer or the right to a jury trial.") (citations omitted).
We also re-emphasize that in whatever context the issue of waiver arises, the goal of waiver remains constant: to ensure that any waiver of a substantial right be done knowingly, intelligently, and voluntarily and that a record be made to demonstrate this fact. That is what trial courts must ensure as a predicate to any valid waiver. We recognize that the circumstances in which a valid waiver may occur will vary from case to case. However, while declining to mandate any additional formal protocol beyond that we find sufficient here, we remind trial courts of the importance of securing a personal waiver and of conducting an "appropriate oral colloquy" to be certain that any waiver is knowing, intelligent, and voluntary. Tucker, 559 So.2d at 220. The extensive use of juror alternates should also minimize the recurrence of this problem, and we encourage trial *1219 courts to be certain that alternates are provided for so that a recurrence of this issue or a more serious one is avoided.
Therefore, in summary, we approve the decision under review and answer the first certified question in the affirmative and the second certified question in the negative.
It is so ordered.
OVERTON, SHAW, GRIMES and HARDING, JJ., concur.
WELLS, J., concurs in result only.
NOTES
[1] Judge Pariente dissented on this issue, while concurring with the majority's reasoning on all other issues. Judge Pariente reasoned that "the record is devoid of any indication that defendant was aware he was relinquishing a constitutional right to trial by a jury of six persons. Without knowledge of the right, there can be no knowing and intelligent waiver." Blair, 667 So.2d at 843 (Pariente, J., concurring in part and dissenting in part).
[2] "The history of the present King of Great Britain is a history of repeated injuries and usurpations... depriving us, in many cases, of the benefits of Trial by Jury." Declaration of Independence, para. 2, 19 (1776).
[3] "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. const. art. III, § 2, cl. 3.
[4] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law...." U.S. Const., Amend. VI. The Sixth Amendment is applicable to the states through the Fourteenth Amendment. Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447-48, 20 L.Ed.2d 491 (1968).
[5] "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const., Amend. VII. Unlike the Sixth Amendment, the Seventh Amendment has not been made applicable to the states through the Fourteenth Amendment. Walker v. Sauvinet, 92 U.S. 90, 92-93, 23 L.Ed. 678 (1875).
[6] In Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447-48, 20 L.Ed.2d 491 (1968), the United States Supreme Court held that the Sixth Amendment right to trial by jury for criminal defendants applied to the states through the Fourteenth Amendment.
[7] Alabama law provided that when a defendant pled guilty to certain criminal charges, "the court must cause the punishment to be determined by a jury" and may "cause witnesses to be examined, to ascertain the character of the offense." Ala.Code, Tit. 15, § 277 (1958). A trial then ensued where both sides could present testimony. Following its conclusion, the jury rendered a verdict and, if it found the defendant guilty, determined his or her punishment after being instructed on the law and range of permissible sentences by the trial judge.
[8] Accord United States v. Robertson, 45 F.3d 1423, 1431 (10th Cir.) (finding that "where the record reflects a defendant's waiver of the right [to jury trial] is voluntary, knowing, and intelligent," there is no "practical justification for finding a waiver invalid simply because Rule 23(a)'s writing requirement has not been met"), cert. denied, ___ U.S. ___, 116 S.Ct. 133, 133 L.Ed.2d 81 (1995); United States v. Saadya, 750 F.2d 1419, 1420 (9th Cir.1985) (stating that only exception to procedural requirement of written waiver of right to trial by jury is when record reflects defendant personally gave express, knowing and intelligent consent in open court).
[9] The certified question was as follows:

After the commencement of a trial in a federal court before a jury of twelve men upon an indictment charging a crime, punishment for which may involve a penitentiary sentence, if one juror becomes incapacitated and unable to further proceed with his work as a juror, can defendant or defendants and the government through its official representative in charge of the case consent to the trial proceeding to a finality with 11 jurors, and can defendant or defendants thus waive the right to trial and verdict by a constitutional jury of 12 men?
Patton, 281 U.S. at 287, 50 S.Ct. at 254.
[10] As previously mentioned, we adopted this section of Patton in toto in Zellers v. State, 138 Fla. 158, 166-67, 189 So. 236, 239 (1939).
[11] Although we are so urged by Blair, we take no position as to whether he was affirmatively misled by defense counsel regarding the possibility of a mistrial. Instead, we agree with the district court majority that we "are not faced with the trial court having declared a mistrial or having indicated that a mistrial was the only alternative." Blair, 667 So.2d at 839.
[12] We believe the Fourth District actually meant." nothing equivocal."